[Civ. No. 51830. Second Dist., Div. Two. June 20, 1978.]

THERESA ENTERPRISES, INC., et al., Plaintiffs and Respondents, v.
EDWARD M. DAVIS, as Chief of Police, etc., et al.,
Defendants and Appellants.

[Civ. No. 51831. Second Dist., Div. Two. June 20, 1978.]

DASH, INC., et al., Plaintiffs and Respondents, v.
EDWARD M. DAVIS, as Chief of Police, etc., et al.,
Defendants and Appellants.

**COUNSEL**

Burt Pines, City Attorney, John T. Neville, Assistant City Attorney, and Daniel U. Smith, Deputy City Attorney, for Defendants and Appellants.

Hertzber, Kaplan & Koslow, Joshua Kaplan, Stephen Warren Solomon, Ralph B. Saltsman, Troy C. Lee, Jr., and Emanuel Cowitt for Plaintiffs and Respondents.

**OPINION**

**BEACH, J.**—Chief of Police Edward M. Davis and the City of Los Angeles appeal from preliminary injunctions granted in *Theresa Enterprises, Inc.* v. *Davis* and *Dash, Inc.* v. *Davis*. The preliminary injunctions, issued July 7, 1977, enjoined defendants and their agents "from engaging in, committing, or performing, either directly or indirectly, in any of the acts herein below described with respect to the premises identified as "The Hello Doll and Toy Theaters" and "The Arches Theater."

"(a) Arresting or citing plaintiffs, or in any manner causing plaintiffs to be arrested or cited under or for violation of Los Angeles Municipal Code sections 42.21 through 42.32, inclusive.

"(b) Enforcing against plaintiffs in any manner or causing to be enforced against plaintiffs in any manner Los Angeles Municipal Code sections 42.21 through 42.32, inclusive."

FACTS:

The record in the instant cases consists of a settled statement. The records in both cases are similar except for declarations of police officers who visited the establishments; their descriptions of the premises and the entertainment differ according to whether they are describing "The Hello Doll and Toy Theaters" or "The Arches Theater."

The claim is made by respondents in both cases that the subject Los Angeles Municipal Code ordinances are void for vagueness; that the underlying action below for declaratory and injunctive relief was a proper means to attack the constitutionality of those sections; that injunctive relief may be granted against illegal enforcement of the code sections even if they are constitutional; and that substantial evidence supports the

holding of the trial court that each of the establishments herein is a "theater, concert hall or similar establishment primarily devoted to theatrical performances." Appellants, however, have claimed throughout that the enabling statutes (Pen. Code, §§ 318.5, 318.6) and the municipal ordinances are constitutional; that an injunction may not issue to prevent the execution of a public statute by officers of the law; and that the establishments in question are not theaters or similar establishments primarily devoted to theatrical performances, as required for exemption by the Penal Code.[1]

Regarding the *Theresa Enterprises, Inc.,* case, Officers Melancon and Ball investigated the premises of "The Hello Doll and Toy Theaters" in June 1977. Topless female dancers performed in one part of the establishment, and totally nude female dancers performed in the other part. The dancers in the topless area alternated between dancing and serving drinks to the customers. The marquee stated "Live dancers on stage adult theater." The telephone book listed the establishment under Cocktail Lounges and not Theaters; but in an application for remodeling and inspection, the present use was listed as "Cocktail Lounge and Theater 'Go-Go' " and the application was to increase the *theater* size. Also filed in opposition to the preliminary injunction was a declaration of the administrator of the Music Center. He described the theater structure of the Music Center and the ratio of employees engaged in sale of refreshments to employees engaged in other activities; he further declared that only 3 percent of the revenues at the Music Center are attributable to sale of programs, refreshments, and souvenirs.

---

[1]Penal Code section 318.5 provides:

"Nothing in this code shall invalidate an ordinance of, or be construed to prohibit the adoption of an ordinance by, a county or city, if such ordinance directly regulates the exposure of the genitals or buttocks of or the breasts of any person who acts as a waiter, waitress, or entertainer, whether or not the owner of the establishment in which the activity is performed employs or pays any compensation to such person to perform such activity, in an establishment which serves food, beverages, or food and beverages, including, but not limited to, alcoholic beverages, for consumption on the premises of such establishment.

"The provisions of this section shall not apply to a theater, concert hall, or similar establishment which is primarily devoted to theatrical performances."

Penal Code section 318.6 provides:

"Nothing in this code shall invalidate an ordinance of, or be construed to prohibit the adoption of an ordinance by, a city or county, if such ordinance relates to any live acts, demonstrations, or exhibitions which occur in public places, places open to the public, or places open to public view and involve the exposure of the private parts or buttocks of any participant or the breasts of any female participant and if such ordinance prohibits an act or acts which are not expressly authorized or prohibited by this code.

"The provisions of this section shall not apply to a theater, concert hall, or similar establishment which is primarily devoted to theatrical performances."

On the other hand, James H. Butler, professor emeritus of drama at the University of Southern California, concluded that The Hello Doll and Toy Theater comes within the requirements of the Los Angeles County ordinance and is a "theater, concert hall or similar establishment primarily devoted to theatrical performances." His declaration included a historical discussion of theaters. Virginia Francis Chase, whose declaration was included in both settled statements, concluded that both establishments fell within the definition of "theater, concert hall or similar establishment primarily devoted to theatrical performances." Ms. Chase is an assistant professor of English at Cal State Los Angeles, an actress, and a director.

According to the officers' declarations in the *Dash, Inc.,* case, the female dancers performed about four dances, with the last dance topless. The dancers were also waitresses and solicited drinks numerous times from the customers. According to the declaration of one officer, who investigated on May 23, 1977, three of the dancers exposed their pubic or vaginal area and eight of the dancers completely exposed their buttocks. In his opinion, the establishment was not a theater. He arrested nine dancing girls and three other people for assisting them in violating the Los Angeles Municipal Code. In The Arches, the establishment involved in *Dash, Inc.,* the western section was composed of a bar, tables, a pool table, and a steam table for buffet meals; in the eastern section were a raised stage, tables and chairs, and some tables with fixed upholstered benches. Photographs of the premises are part of the record.

Frank Sebastian, one of the plaintiffs in the *Dash* case, declared that he obtained professional guidance from a Los Angeles police investigator regarding how to change The Arches to make it a "theater or similar establishment." A declaration by the investigator confirms this. Nevertheless, arrests were made in May 1977 and have been made since that date.

The trial court made the following findings and granted the preliminary injunction:

"(1) The city ordinances in question must be read as not intended to be applicable to '. . . a theater, concert hall, or similar establishment which is primarily devoted to theatrical performances.' Otherwise, they would not be within the enabling acts (Penal Code Sections 318.5, 318.6) and would fall because of the preemption doctrine of *In re Lane* (1962) 58 Cal.2d 99 [22 Cal.Rptr. 857, 372 P.2d 897].

"(2) To the extent that the ordinances proscribe the described conduct, they are neither violative of the free speech guarantees of the First or Fourteenth Amendments, or their California Constitutional counterparts, nor are the ordinances unconstitutionally vague. *Crownover* v. *Musick* (1973) 9 Cal.3d 405 [107 Cal.Rptr. 681, 509 P.2d 497].

"(3) Whether or not the premises in question, as operated, constitute a 'theater, concert hall, or similar establishment which is primarily devoted to theatrical performances' is a question of fact. If they are, then Respondent's actual and threatened multiple criminal prosecutions would violate the State constitution under the preemption doctrine, the Legislature's having in that context expressly refused to yield its occupation of the field under Penal Code Sections 318.5 and 318.6. The question whether the standards to determine that factual question are impermissibly vague was not addressed in *Crownover* or any other case cited to this court.

"(4) The factual question itself must be resolved within the meaning intended by the legislature in its useage of the above-quoted phrase. It seems clear to this court that the legislature, in creating that exception, was motivated in large part by lurking First Amendment problems. See *Crownover, supra,* 9 Cal.3d at 431 (dissenting opinion). Although *Crownover* held that not all sexually oriented conduct is 'speech', it does not follow that all 'speech' need be asexual or, for that matter, that protected sexually oriented communication must be verbal. 'Hair' would be 'theater' even if the performers were to 'hum' the songs rather than to sing words. The issue here is not whether Petitioners' particular brand of pantomime is the esthetic equivalent of that of Marcel Marceau, but rather whether the vagueness test can be applied without at least some concern for the potential protrusion of the camel's nose under the tent. Arresting the performers of today's 'Toy Theater' may lead to the arrest of tomorrow's 'Oh, Calcutta'.

"(5) An additional facet to the problem of interpreting the statute is that the legislature obviously contemplated that some 'theaters, concert halls, and similar establishments . . .' would also be 'an establishment which serves food, beverages, or food and beverages, including, but not limited to, alcoholic beverages, for consumption on the premises of such establishment.' Otherwise, the second paragraph of Section 318.5 would be superfluous. Thus, Respondent's evidence of the operations of The Music Center is interesting but essentially irrelevant.

"(6) The final resolution of the factual question, the problems of interpretation and the potential constitutional issues will be accomplished at the trial. The questions are presented here only in the context of whether a preliminary injunction should issue. The court is satisfied that Petitioners have shown a high probability of success on one or more of these issues. Under such circumstances, it would not be an adequate remedy to leave Petitioners to successive defenses at [*sic*] repeated criminal trials."

CONTENTIONS ON APPEAL:

1. An injunction may not issue to prevent the execution of a public statute by officers of the law for the public benefit.

2. The municipal ordinances are not invalid due to unconstitutional vagueness in Penal Code sections 318.5 and 318.6.

3. The establishment in question is not a "theater or similar establishment primarily devoted to theatrical performances."

DISCUSSION:

1. *Injunctive relief was not a proper means to attack the constitutionality of the Municipal Code and Penal Code sections.*

■ Appellant's initial contention is that an injunction may not issue to prevent the execution of a public statute by officers of the law for the public benefit. (See Code Civ. Proc., § 526, 2d subd. 4.)

This division stated in *City of Santa Monica* v. *Superior Court,* 231 Cal.App.2d 223, 226 [41 Cal.Rptr. 824]: ". . . we regard it as beyond question that trial courts should be extremely cautious, and even hesitant and reluctant, when asked to enjoin law enforcement officials from enforcing an ordinance obviously approved and adopted by duly elected representatives of the people for the purpose of promoting and protecting public morality *prior to a trial on the merits.* With all presumptions favoring the validity and constitutionality of the enactments of the various legislative bodies, it should be only under extraordinary circumstances that anyone challenging the validity of such a law should immediately be granted the ultimate relief he seeks prior to any trial on the merits."

We have continued to follow that rule in *7978 Corporation* v. *Pitchess*, 41 Cal.App.3d 42, 46 [115 Cal.Rptr. 746]. (See also *Howard* v. *Superior Court*, 52 Cal.App.3d 722, 725-726 [125 Cal.Rptr. 255].) While we realize that other divisions of this court without regard or reference to our prior holdings have upheld preliminary injunctions in similar circumstances (see *Renba Lil* v. *Kortz*, 65 Cal.App.3d 467 [135 Cal.Rptr. 287], and *Startrack, Inc.* v. *County of Los Angeles*, 65 Cal.App.3d 451 [135 Cal.Rptr. 283]), we prefer to follow our previous decisions in this matter.

We note that the court in *Pitchess* v. *Superior Court*, 2 Cal.App.3d 644, 650 [83 Cal.Rptr. 35], states: "A much stronger showing would have to be made by a party seeking judicial protection against arrest for nude dancing than by a book seller or a film exhibitor seeking similar relief. We cannot ignore the fact that when the form of expression can be instantly changed, as in a dance, there exists the possibility that the injunctive process can be utilized as a shield to avoid arrest for deliberate violations of valid penal statutes regulating moral conduct."

*2. Penal Code sections 318.5 and 318.6 are constitutional.*

While our initial inclination, as discussed above, is to deny injunctive relief and allow the criminal courts to be the forum of resolution, we realize that ". . . the rule prohibiting . . . an injunction [that prevents the execution of a public statute by officers of the law for the public benefit] does not operate when the statute which is stayed is unconstitutional or otherwise invalid. [Citation.]" (*Agricultural Labor Relations Bd.* v. *Superior Court*, 16 Cal.3d 392, 401 [128 Cal.Rptr. 183, 546 P.2d 687].) As in that case, however, we conclude that the statute is valid and that therefore the trial court had no jurisdiction except to deny the request to enjoin enforcement of the municipal ordinances.

Respondents herein argue on appeal that the Los Angeles Municipal Code sections are void for vagueness under the due process clauses of the United States and California Constitutions. The argument that the code sections are void for vagueness was made only in respect to the contention that the county criteria defining "theater" must be used or the code sections must be considered unconstitutional as void for vagueness. No direct contention was made below that the statute or ordinance are

unconstitutional except *as applied* to respondents herein.[2] Therefore, that is the only constitutional argument we must address.

Respondents seem to argue that the theater exemption of Penal Code sections 318.5 and 318.6 must be incorporated into the Los Angeles Municipal Code sections in order to make them constitutional; that the establishments in the instant case do constitute "a theater, concert hall, or similar establishment primarily devoted to theatrical performances"; and that therefore respondents fall within the exemption and should not be prosecuted for violation of the municipal code ordinances. The first argument, that the theater exemption must be incorporated into the ordinances, is not contested by the City in this case. Appellants do contend, however, that the establishments in question are not theaters or similar establishments primarily devoted to theatrical performances.

We agree with appellants. ▮ Merely because an establishment has a stage, fixed seats, and entertainment does not make that establishment a "theater."[3] The Supreme Court noted these differences in *Crownover* v. *Musick, supra,* 9 Cal.3d at pages 430-431: "We judicially notice (Evid. Code, § 459, subd. (a)), as a matter of generalized knowledge (Evid. Code, § 451, subd. (f)), that theater entertainers usually perform on a stage removed from the audience, while waiters and waitresses must by virtue of their calling mingle constantly with the patrons. Similarly, if entertainers perform on a stage in a bar, that stage is likely to be much smaller and closer to the patrons than is a stage located in a theater. As noted *ante* in our discussion of the police power, there are conceivable and legitimate state purposes involved in regulating the exposure of the pubic area, genitals or breasts by waiters, waitresses and *entertainers.* Such purposes conceivably include the furtherance of the public order, morals and welfare. But the same considerations are arguably not involved in a theater where nude persons are generally separated from the customers *by a stage of large dimensions.* Situations provide a rational basis to treat differently nude performers in theaters, on the one hand,

---

[2]We note that the California Supreme Court in *Crownover* v. *Musick,* 9 Cal.3d 405, 425 [107 Cal.Rptr. 681, 509 P.2d 497], rejected the contention that the ordinances in that case, similar to the ordinances in the case at bench, are unconstitutionally broad. The Supreme Court in *Crownover* v. *Musick, supra,* 9 Cal.3d at page 428, did not decide whether various ordinances were unconstitutional as applied to plaintiffs in that case. Plaintiffs therein did not pursue the point and presented no argument on it; nor was the claim urged before the trial court.

[3]Los Angeles County Ordinance No. 9884 in defining "theater," "concert hall," and "similar establishment" lists physical criteria but also specifies that the "primary function is to give . . . performances."

and *nude performers,* waiters and waitresses *in establishments such as plaintiffs'* on the other." (Italics added.)

While we agree with respondents that an establishment does not have to be the Music Center in order to be considered a theater or similar establishment primarily devoted to theatrical performances, the establishments in question do not as a matter of law qualify for the exemption. Certainly, there are fixed chairs and a stage. But the stage is very near to the patrons, and the waitresses and entertainers periodically exchange roles. It is obvious that the sale of food and beverage, encouraged and promoted by the presentation of nudity for the sake of sexual titilation, rather than the rendition of any First Amendment-protected entertainment, is the primary purpose of these establishments.

The order of the trial court granting the preliminary injunction is reversed.

Fleming, Acting P. J., and Compton, J., concurred.

On July 17, 1978, the opinion was modified to read as printed above. Respondents' petitions for a hearing by the Supreme Court were denied August 24, 1978.