[Civ. No. 55837. Second Dist., Div. Three. Sept. 25, 1979.]

EWAP, INC., et al., Plaintiffs and Respondents, v.
CITY OF LOS ANGELES et al., Defendants and Appellants.

Counsel

Burt Pines, City Attorney, Thomas C. Bonaventura, Senior Assistant City Attorney, Sally Disco, Assistant City Attorney, and Pedro B. Escheverria, Deputy City Attorney, for Defendants and Appellants.

Abelson, Harris & Brunon, Elliot J. Abelson, Brown, Weston & Sarno and David M. Brown for Plaintiffs and Respondents.

Opinion

**POTTER, Acting P. J.**—This appeal involves the constitutionality of two provisions of Los Angeles Municipal Code section 103.101 (as amended by Ordinance No. 150,184, approved Oct. 5, 1977) governing permission to operate a picture arcade. Defendants City of Los Angeles, board of police commissioners, police chief, and city attorney appeal from the granting of a preliminary injunction to plaintiffs, a group of nine arcade proprietors, restraining the enforcement of subdivisions (c)(4) and (i) of section 103.101.

The ordinance requires that a permit be obtained for the operation of a picture arcade.[1] Subdivision (c)(4) provides that a permit shall be denied if, within the past two years, "the applicant, his or her employee, agent, partner, director, officer, stockholder or manager has . . . knowingly allowed or permitted any act of sexual intercourse, sodomy, oral copulation, or masturbation, to be committed at or in any arcade or picture arcade, or . . . any arcade or picture arcade to be used as a place in which solicitations for [such acts] openly occur . . . ."

Subdivision (i) requires that "the entire interior of such premises wherein the pictures are viewed [be] visible upon entrance to such premises" and prohibits booths which are "partially or fully enclosed . . . or . . . concealed."[2]

---

[1] A "picture arcade" is defined in the ordinance as "any place to which the public is admitted wherein one or more coin or slug-operated, or electrically, electronically or mechanically controlled still or motion picture machines or projectors are maintained to show still or motion pictures to five or fewer persons per machines at any one time." (§ 103.101, subd. (a).)

[2] Neither party has raised any issue as to the validity of the closing hour requirement in subdivision (g) of the ordinance. That question is presently pending before our Supreme Court in *People* v. *Glaze* (Crim. 21123, hg. granted Aug. 24, 1979).

Plaintiffs sought declaratory and injunctive relief, claiming that the ordinance was unconstitutional as an invalid infringement on freedom of ' expression and as an attempt to regulate sexual conduct which was preempted by state law.

On appeal, defendants contend that: (1) no showing of irreparable injury justifying preliminary injunctive relief has been made by plaintiffs, and (2) enforcement of subdivisions (c)(4) and (i) of the ordinance cannot be restrained because they are not unconstitutional, either as (a) restraints upon freedom of expression, or (b) intrusions upon state preempted regulations of sexual conduct.

## Discussion

### Summary

The order granting the preliminary injunction must be reversed. Though subdivision (c)(4), authorizing denial of a permit on the basis of prior conduct, is an unconstitutional prior restraint in violation of the First Amendment, preliminary injunctive relief with respect thereto was improper because plaintiffs did not show that they would be irreparably injured by enforcement pending trial. Subdivision (i), prohibiting closed or concealed booths, is a valid, reasonable regulation of the manner of arcade operation and is not preempted by state law. The court, therefore, lacked jurisdiction to enjoin its enforcement.

### ■ Subdivision (c)(4) Is An Invalid Prior Restraint on First Amendment Rights

Both sides briefed the First Amendment question here presented, and plaintiffs have requested declaratory relief on this issue. Thus, though, as hereinafter demonstrated, plaintiffs have made no showing of irreparable injury pending trial, we deem it appropriate to state our opinion on the merits of plaintiffs' claim. (*7978 Corporation* v. *Pitchess* (1974) 41 Cal.App.3d 42, 46 [115 Cal.Rptr. 746].)

■ The operation of a picture arcade is an activity protected by the First Amendment. (*People* v. *Perrine* (1975) 47 Cal.App.3d 252, 257 [120 Cal.Rptr. 640]; see *Joseph Burstyn, Inc.* v. *Wilson* (1952) 343 U.S. 495, 502 [96 L.Ed. 1098, 1106, 72 S.Ct. 777].) While a requirement that a license be obtained before engaging in a business where First Amendment activities

are involved has long been recognized as a valid exercise of the police power (*Sunset Amusement Co.* v. *Board of Police Commissioners* (1972) 7 Cal.3d 64, 72 [101 Cal.Rptr. 768, 496 P.2d 840]; *Burton* v. *Municipal Court* (1968) 68 Cal.2d 684, 690 [68 Cal.Rptr. 721, 441 P.2d 281]), the standards governing the issuance or denial of such a permit have been subjected to "strict scrutiny." (*Sunset Amusement Co.* v. *Board of Police Commissioners, supra;* see e.g., *Perrine* v. *Municipal Court* (1971) 5 Cal.3d 656, 661-665 [97 Cal.Rptr. 320, 488 P.2d 648]; *Dillon* v. *Municipal Court* (1971) 4 Cal.3d 860, 866 [94 Cal.Rptr. 777, 484 P.2d 945]; *Burton* v. *Municipal Court, supra,* 68 Cal.2d at pp. 690-697.)

■ The denial of a permit is a total prior restraint upon a person's engaging in a First Amendment protected activity. Though a system of prior restraint is not unconstitutional per se, the United States Supreme Court has consistently held that such a system comes to a court " 'bearing a heavy presumption against its constitutional validity.' " (*Southeastern Promotions, Ltd.* v. *Conrad* (1975) 420 U.S. 546, 558 [43 L.Ed.2d 448, 459, 95 S.Ct. 1239]; *New York Times Co.* v. *United States* (1971) 403 U.S. 713, 714 [29 L.Ed.2d 822, 824-825, 91 S.Ct. 2140]; *Bantam Books, Inc.* v. *Sullivan* (1963) 372 U.S. 58, 70 [9 L.Ed.2d 584, 593, 83 S.Ct. 631]; see also *Near* v. *Minnesota* (1931) 283 U.S. 697, 716 [75 L.Ed. 1357, 1367-1368, 51 S.Ct. 625].)

■ Where, as here, an ordinance mandates denial of a license to conduct a First Amendment related business on the basis of prior misconduct, such a disqualification provision can only be sustained if there is a clear and present danger that serious substantive evil would result from granting that license.

In *Perrine* v. *Municipal Court, supra,* 5 Cal.3d 656, our Supreme Court held that "it is constitutionally impermissible to deny an applicant a license to operate a bookstore solely upon the ground that he has suffered a prior criminal conviction." (*Id.,* at p. 659.) The court invalidated a Los Angeles County licensing ordinance that authorized disqualification, among other things, for past criminal convictions of sex crimes, crimes of violence and crimes involving obscenity. In response to the contention that the commission lawfully denied Perrine's application for a license on the basis of his conviction of an obscenity offense (Pen. Code, § 311.2), which was reasonably related to the operation of a book store, our Supreme Court stated (5 Cal.3d at pp. 664-665): "[S]ince a denial of a license would prohibit petitioner from engaging in an activity protected by the First Amendment, it could only be justified, *even under a narrowly*

*drawn ordinance,* if permitting a person who had been convicted of a crime involving obscenity to operate a bookstore constituted *a clear and present danger of a serious, substantive evil. (Wirta* v. *Alameda-Contra Costa Transit District* (1968) 68 Cal.2d 51, 60 [64 Cal.Rptr. 430, 434 P.2d 982]; *Thomas* v. *Collins* (1943) 323 U.S. 516, 530 [89 L.Ed. 430, 440, 65 S.Ct. 315]; *Board of Education* v. *Barnette* (1942) 319 U.S. 624, 639 [87 L.Ed. 1629, 1638, 63 S.Ct. 1178, 147 A.L.R. 674].) No such clear and present danger appears. *We cannot assume that because petitioner was once convicted of violating Penal Code section 311.2, he will violate it again,*[3] or that if he does so, criminal sanctions will not afford an adequate remedy. (See, *Near* v. *Minnesota, supra,* 283 U.S. 697, 715 [75 L.Ed. 1357, 1367].). . . .

"To interpret the ordinance in this case to permit denial of a license because of a past conviction of violating Penal Code section 311.2 would do more than create a hazard to protected freedoms; it would suppress them altogether. The penalty for violating section 311.2 does not include a forfeiture of First Amendment rights, and the risk that criminal sanctions will be insufficient to deter future violations of that section cannot justify the county's attempted forfeiture of those rights on the theory that past violators are unfit to operate bookstores." (Italics added.)

The Supreme Courts of Washington (*Seattle* v. *Bittner* (1973) 81 Wn.2d 747 [505 P.2d 126]) and Minnesota (*Alexander* v. *City of St. Paul* (1975) 303 Minn. 201 [227 N.W.2d 370]) have followed these principles enunciated in *Perrine* v. *Municipal Court, supra,* 5 Cal.3d 656, and declared movie theatre licensing ordinances unconstitutional as an impermissible prior restraint where denial of a license to operate the business was based upon the grounds that a person had suffered a prior criminal conviction.[4]

And in *Natco Theatres, Inc.* v. *Ratner* (S.D.N.Y. 1979) 463 F.Supp. 1124, a federal district court similarly held that a New York City theatre

---

[3]This is a direct rejection of defendants' attempt to justify the disqualification on the ground that "the purpose of the provision . . . is to prevent the issuance of movie arcade permits to persons who are likely to permit such unlawful conduct to occur therein."

[4]The Washington ordinance mandated denial of a license to any person who had been convicted of a crime within the past five years " 'involving moral turpitude or intent to defraud.' " (*Seattle* v. *Bittner, supra,* 505 P.2d at p. 128.)

The Minnesota ordinance permitted rescission or denial of a license to operate a theatre if a licensee, owner, manager, lessee, employee or person with financial interest in the theatre had been convicted of an obscenity offense which was relevant to the operation of the theatre. (*Alexander* v. *City of St. Paul, supra,* 227 N.W.2d at p. 371.)

licensing ordinance[5] was unconstitutional. The district court pointed out that the challenged ordinance suffered from the same infirmities as did the ordinance declared unconstitutional in *Perrine, Bittner,* and *Alexander,* stating (463 F.Supp. at pp. 1130-1131): "This Court is now faced with a new attempt by a municipality to utilize its licensing authority (by creating a standard based upon prior conduct) in order to rid itself of undesirable, though not unsafe, establishments. In so doing, the City of New York has created a system of prior restraint that cannot survive constitutional scrutiny. [Fn. omitted.]

". . . . The City may not, as it has tried to do, utilize its licensing power to deprive a party of the right to exercise a constitutionally protected right solely because of past misconduct.

". . . . . . . . . . . . . . . . . . . .

"A system of prior restraint based upon past convictions can only be sustained if it is shown that granting a license to an individual with such a record would present a clear and present danger of a serious substantive evil. *Perrine* v. *Municipal Court,* 5 Cal.3d at 664, 97 Cal.Rptr. at 324, 488 P.2d at 654."

Defendants' attempts to distinguish the prior restraint here from that proscribed in *Perrine* v. *Municipal Court, supra,* 5 Cal.3d 656, are not persuasive. The denial of a permit cannot be justified on the grounds that the protected activity is a picture arcade showing coin-operated movies, rather than a bookstore. Both businesses equally constitute protected speech activities.

Defendants' reliance on *People* v. *Perrine, supra,* 47 Cal.App.3d 252, to support the validity of subdivision (c)(4) is misplaced. In that case, the appellate court upheld the validity of a county ordinance requiring that a licensed manager be on the premises of a motion picture arcade. The challenged provision was a reasonable regulation of the time, place and manner of operation of a protected activity (see discussion, *infra*), not, as here, a prior restraint which, by denying a license, would totally "prohibit [applicant] from engaging in an activity protected by the First Amendment." (*Perrine* v. *Municipal Court, supra,* 5 Cal.3d at p. 664.)

---

[5]The New York ordinance allowed denial of a license if the applicant or one of the officers, principals, directors or 10 percent stockholders had been convicted of any of certain offenses (both related and unrelated to operation of movie theatres). (*Id.,* at pp. 1128-1129.)

The denial of a license here, unlike in *Perrine* v. *Municipal Court, supra,* is, moreover, based on prior conduct which did not result in a conviction. If the determination, beyond a reasonable doubt, that a person violated the law does not warrant denial of a permit, certainly the determination by some lesser standard of proof that a person (or his associate) permitted another to violate the law, cannot.[6] (Cf. *Remers* v. *Superior Court* (1970) 2 Cal.3d 659, 668 [87 Cal.Rptr. 202, 470 P.2d 11].)

Subdivision (c)(4) is, therefore, unconstitutional on its face as an impermissible prior restraint on freedom of expression.

■ *Plaintiffs Failed to Show They Would Be Irreparably Injured by Enforcement of Subdivision (c)(4)*

To support a preliminary injunction, the applicant must show that pending trial he will suffer irreparable injury from enforcement of an unconstitutional law. *(7978 Corporation* v. *Pitchess, supra,* 41 Cal.App.3d at p. 46.) Plaintiffs claimed in their complaint and declarations that they cannot operate their arcades in compliance with the booth requirements of subdivision (i) without severe economic hardship and will suffer irreparable injury from imminent prosecution for failing to comply with the ordinance. Plaintiffs, however, have not alleged nor made any attempt to show by their declarations that the application of subdivision (c)(4) would preclude any of them from obtaining a picture arcade permit. Thus, they have failed to make any showing that they would be harmed by enforcement of this latter provision.

The issuance of a preliminary injunction, restraining enforcement of subdivision (c)(4), was, therefore, improper.

■ *Subdivision (i) Is a Severable Valid Regulation of Protected Speech*

The Los Angeles Municipal Code expressly provides for severability (§ 11.00, subd. (1)). The invalid provision of subdivision (c)(4) is unquestionably easily severable from the provisions of subdivision (i) which deals with an entirely unconnected regulatory aspect. Consequently, the unconstitutionality of subdivision (c)(4) does not taint the

---

[6] Indeed, disqualification because of a finding by a commission, rather than a conviction, may raise an additional problem of uncertainty. (See *Perrine* v. *Municipal Court, supra,* 5 Cal.3d at p. 663.)

remainder of the ordinance. (*City and County of San Francisco* v. *Cooper* (1975) 13 Cal.3d 898, 930 [120 Cal.Rptr. 707, 534 P.2d 403].)

The fact that the operation of picture arcades constitutes protected speech does not immunize them from the kind of regulation involved in subdivision (i) of the ordinance. ■ It is undisputed that content-neutral reasonable regulations of the time, place and manner of protected speech are permitted by the First Amendment[7] where such regulations are necessary to further significant governmental interests. (See *Young* v. *American Mini Theatres* (1976) 427 U.S. 50, 63, fn. 18 and 84 [49 L.Ed.2d 310, 322, 334, 96 S.Ct. 2440] (maj. opn. and dis. opn. of Stewart, J.)[8]

Thus, "[This] regulation is sufficiently justified if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." (*United States* v. *O'Brien,* (1968) 391 U.S. 367, 377 [20 L.Ed.2d 672, 680, 88 S.Ct. 1673].)

■ The prohibition of enclosed or concealed booths in picture arcades easily passes this test. The city has the constitutional power to reasonably regulate and license arcades for purposes of health, safety and public welfare. (*People* v. *Perrine, supra,* 47 Cal.App.3d at p. 260; *Antonello* v. *City of San Diego* (1971) 16 Cal.App.3d 161, 166 [93 Cal.Rptr. 820]; see also *Burton* v. *Municipal Court, supra,* 68 Cal.2d at pp. 689-690.)

As was pointed out in *People* v. *Perrine, supra,* 47 Cal.App.3d at page 258: "A picture arcade is a business, carried on in a place which the public generally is invited to enter and use. Since it is a place of entertainment, its patrons are not expected to enter with the solemnity of a business visitor at a mercantile establishment. Ordinarily those entering a picture arcade are seeking amusement, relaxation or excitement, possibly sexual stimulation or gratification, depending on the taste or mood of the individual and the kind of pictures exhibited. Among such visitors it is foreseeable that some will be predisposed to conduct which is

---

[7]On appeal, plaintiffs apparently concede that subdivision (i) does not violate their First Amendment rights since they argue only that said subdivision is preempted by state law.

[8]In *Young,* the majority and dissenting justices agreed that such content-neutral regulations were permissible.

offensive, dangerous to others and even unlawful. The potential for misuse of the premises, for law violations, and for bodily harm to law-abiding patrons, is obvious, as is the concomitant need for [deterring such conduct]."

The city has a substantial interest in preventing the kind of dangerous or unlawful conduct, as well as the health and safety problems, which may be anticipated in a picture arcade where the booths are concealed or enclosed. The prohibition of such booths furthers the city's interest in deterring and detecting the use of the premises for such unlawful activity.

That governmental interest is unrelated to the suppression of free expression and the requirement that the interior of the booths be visible does not restrict First Amendment freedoms. There is no restriction on either the content of the pictures or their dissemination.

Thus, this provision (like the regulation of the construction and operation of "peep show establishments" in *Antonello* v. *City of San Diego, supra,* 16 Cal.App.3d 161, and the licensed manager requirements for picture arcades in *People* v. *Perrine, supra,* 47 Cal.App.3d 252) is a reasonable exercise of the city's police power.

### ■ *Subdivision (i) Does Not Intrude on State Preempted Regulation of Sexual Conduct*

Nor is the open booth requirement (subd. (i)) unconstitutional as an attempt to regulate sexual conduct that is preempted by state law. ■ We recognize that: "[A] local municipal ordinance is invalid if it attempts to impose additional requirements in a field that is preempted by general law. (*In re Lane,* 58 Cal.2d 99, 102 [22 Cal.Rptr. 857, 372 P.2d 897]; *Abbott* v. *City of Los Angeles,* 53 Cal.2d 674, 681 [3 Cal.Rptr. 158, 349 P.2d 974, 82 A.L.R.2d 385]; *Agnew* v. *City of Los Angeles,* 51 Cal.2d 1, 5 [330 P.2d 385].) Local legislation in conflict with general law is void. Conflicts exist if the ordinance duplicates (*Chavez* v. *Sargent,* 52 Cal.2d 162, 176 [339 P.2d 801]; *In re Portnoy,* 21 Cal.2d 237, 240 [131 P.2d 1]; *Pipoly* v. *Benson,* 20 Cal.2d 366, 370 [125 P.2d 482, 147 A.L.R. 515]), contradicts (*Ex parte Daniels,* 183 Cal. 636, 642-645 [192 P. 442, 21 A.L.R. 1172]), or enters an area fully occupied by general law, either expressly or by legislative implication (*In re Lane, supra,* 58 Cal.2d 99, 102; *Abbott* v.

*City of Los Angeles, supra,* 53 Cal.2d 674, 682-688; *Chavez* v. *Sargent, supra,* 52 Cal.2d 162, 176-178). If the subject matter or field of the legislation has been fully occupied by the state, there is no room for supplementary or complementary local legislation, even if the subject were otherwise one properly characterized as a 'municipal affair.' (*In re Hubbard,* 62 Cal.2d 119, 125 [41 Cal.Rptr. 393, 396 P.2d 809]; *In re Zorn,* 59 Cal.2d 650 [30 Cal.Rptr. 811, 381 P.2d 635]; *In re Lane, supra,* 58 Cal.2d 99; *Abbott* v. *City of Los Angeles, supra,* 53 Cal.2d 674.)" (*Lancaster* v. *Municipal Court* (1972) 6 Cal.3d 805, 807-808 [100 Cal.Rptr. 609, 494 P.2d 681].)

In *Lancaster, supra,* relied upon by plaintiffs, our Supreme Court invalidated a city ordinance making it a misdemeanor for a person to massage a member of the opposite sex as a commercial business. The court held that the ordinance constituted an unconstitutional regulation of the criminal aspects of sexual conduct, a field of the law occupied by the state to the exclusion of all local regulation. On this same ground, the court in *In re Lane* (1962) 58 Cal.2d 99 [22 Cal.Rptr. 857, 372 P.2d 897], also invalidated a city ordinance prohibiting an unmarried person from "resorting" to numerous specified places for the purposes of having sexual intercourse or participating in a lewd act.

█ The open booth requirement of this Los Angeles city ordinance, however, does not conflict with the state's preemption of the criminal aspects of sexual activities. Unlike in *Lancaster* and *Lane,* this ordinance does not create a new standard of sexual conduct. Nor does it purport to criminalize sexual activity which is not criminal under state law.

Plaintiffs contend that the testimony at the board of police commissioners' hearing prior to the adoption of the ordinance demonstrates that the purpose of this provision is to regulate sexual activity, particularly masturbation. We disagree. The purpose of subdivision (i) is not to regulate lewd conduct (Pen. Code, § 647, subd. (a)), a matter preempted by state law. Rather, as the testimony shows, its purpose is to regulate the operation of picture arcades so that their operation does not invite or encourage violations of state law. Thus, the provision no more constitutes a regulation of sexual activity than does an ordinance requiring full lighting of streets. It is, therefore, a valid exercise of the city's police power which does not intrude upon a preempted field. (See *Antonello* v. *City of San Diego, supra,* 16 Cal.App.3d at pp. 166-167.)

■ *Since Subdivision (i) Is*
*Constitutional, Injunctive*
*Relief Is Improper*

The propriety of injunctive relief restraining enforcement of subdivision (i) depends on the validity of that section. "[T]he rule prohibiting . . . an injunction [that prevents the execution of a public statute by officers of the law for the public benefit] does not operate when the statute which is stayed is unconstitutional or otherwise invalid." (*Agricultural Labor Relations Bd.* v. *Superior Court* (1976) 16 Cal.3d 392, 401 [128 Cal.Rptr. 183, 546 P.2d 687]; see also *Theresa Enterprises, Inc.* v. *Davis* (1978) 81 Cal.App.3d 940, 947 [146 Cal.Rptr. 802].) As in those cases, however, we have concluded that subdivision (i) is constitutional and that, therefore, the trial court had no jurisdiction except to deny the request to enjoin enforcement of that provision. (*Ibid.*)

*Disposition*

The order granting the preliminary injunction is reversed.

Cobey, J., and Allport, J., concurred.

A petition for a rehearing was denied October 17, 1979, and respondents' petitions for a hearing by the Supreme Court were denied November 21, 1979.