[Civ. No. 21618. Third Dist. Oct. 21, 1982.]

COUNTY OF SACRAMENTO et al., Petitioners, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent;
GOLDIE'S BOOKSTORES, INC., Real Party in Interest.

COUNSEL

L. B. Elam, County Counsel, and Franklin M. Garcia, Deputy County Counsel, for Petitioners.

No appearance for Respondent.

Arthur Wells, Jr., for Real Party in Interest.

OPINION

**PUGLIA, P. J.**—Petitioners Sacramento County and its sheriff are defendants in an action pending in the respondent superior court. In this writ proceeding, they seek mandate to secure a protective order limiting discovery and to vacate a trial court stay of enforcement of an ordinance. A writ of mandate will issue directing the granting of a protective order.

The pending action in respondent court tenders a challenge to the provisions of chapter 9.87 of the Sacramento County Code. Chapter 9.87 deals with the operation of picture arcades which are there defined as "any place to which the public is admitted or any public place, wherein one or more still or motion picture machines or projectors are operated or maintained to show still or motion pictures to five or fewer persons." (Sacramento County Code, § 9.87.010.) The ordinance also provides "No picture arcade shall be maintained or operated unless the complete interior of the place where the pictures are viewed is visible upon entrance to such place. No partially or fully enclosed booths or partially or fully concealed booths shall be maintained." (§ 9.89.020.)

Chapter 9.87 was enacted December 17, 1981, as an urgency measure to take effect immediately as to picture arcades not yet open for business; existing arcades were given three months (until March 17, 1982) to conform their viewing

booths. (§ 9.87.030.) The recited facts constituting the urgency were: "The Sheriff has determined that enclosed or concealed booths in picture arcades greatly increase the potential for misuse of the premises, including unlawful conduct and bodily harm to law-abiding patrons. This ordinance will greatly decrease the potential harm to the public."

Goldie's Bookstores, Inc. (Goldie), the real party in interest here and plaintiff in the trial court action, has operated a so-called adult bookstore at 4978 Watt Avenue in the County of Sacramento since before the enactment of chapter 9.87. On February 18, 1982, Goldie filed suit for injunctive and declaratory relief, naming among the defendants the county and the sheriff. The complaint alleges the ordinance violates the First Amendment (U.S. Const., 1st Amend.) and is unconstitutional on its face and as applied because, inter alia, it is not narrowly drawn to further an important governmental interest and is overbroad in that its terms are unnecessary to regulate any legitimate concerns of the county. On the same day the complaint was filed, Goldie sought and obtained an ex parte order allowing service of deposition notices on the defendants. In his declaration in support of that order, counsel for Goldie averred that the depositions were needed to "disclose evidence concerning the factual basis for the ordinance and the need for the ordinance provisions . . . . " The deposition notice to the county requested production of:

"All police reports, police officers' notes, records, memoranda, documents, microfilms, machine-readable information storage media, books, magazines and other things containing information concerning

"a.) permits or licenses or applications therefor or materials submitted in order to obtain or reflecting work done pursuant thereto, of whatever kind or nature, issued to any person or entity regarding the premises located at 4978 Watt Avenue or the business located thereon;

"b.) work done pursuant to said permits or licenses by any person or entity;

"c.) action taken by the county concerning the premises at 4978 Watt Avenue or the business located thereon;

"d.) alleged crimes occurring at or around any picture arcade (as defined by Sacramento County Code Section 9.87.010) after January 1, 1976;

"e.) arrests occurring because of behavior or conditions occurring at or around said picture arcades since January 1, 1976;

"f.) complaints by anyone concerning activity at or around said picture arcades since January 1, 1976.

"g.) arrests or detentions occurring at or because of behavior or conditions occurring at any business location which regularly sells or displays books, magazines or films with sexual content since January 1, 1976.

"h.) Ordinances, rules, regulations, policy statements, directives and plans regarding enforcement of state or county laws involving businesses or persons selling or displaying books, magazines or films with sexual content since January 1, 1976 or operating or maintaining said 'picture arcades' since said date."

The sheriff was requested to produce at his deposition the same materials requested of the county except those pertaining to permits or license applications and in addition:

"All police reports, police officers' notes, records, memoranda, documents, microfilms, machine-readable information storage media, books, magazines, and other things containing information concerning . . .

"f.) the investigation, patroling or enforcement of state and local laws regarding those stores identified as 'porno stores' by [the sheriff] in his correspondence to [the county executive] dated November 20, 1981.[1]

"g.) 'the aberrations of social misfits who frequent porno shops' as that term is used by [the sheriff] in the said November 20, 1981 correspondence.

"h.) 'criminal investigations of bizarre sex crimes' which revealed 'telltale artifacts found in the suspect's lodgings' that were purchased at 'local porno galleries' as set forth in the said November 20, 1981 correspondence.

"i.) all booths, [panoramas] or peep show devices within which films are shown of any kind."

Both defendants promptly moved for a protective order. The motion was heard on March 5, 1982. The court denied the motion, but delayed the depositions until at least April 1 to give defendants an opportunity to seek a review of the denial. To maintain the status quo and avoid loss to Goldie before the merits of the complaint for injunctive relief could be heard, the court restrained enforcement of the ordinance as to plaintiff until April 16.

Defendants then applied to this court for relief from the denial of their motion for protective order and from the stay of enforcement of the ordinance. After

---

[1]The document apparently referred to here is an interdepartment memorandum from the sheriff to the county executive complaining of the sheriff's inability to deny business license applications "regardless of the criminal impact these establishments will have upon our community."

we issued an alternative writ and stayed further discovery proceedings, the trial court extended the stay of enforcement of the ordinance pending our resolution of this writ proceedings.

■ Defendants' trial court motion for a protective order was based on the claim the proposed inquiries are irrelevant and constitute annoyance and oppression within the meaning of Code of Civil Procedure section 2019, subdivision (b)(1).[2] In this court defendants argue Goldie seeks to probe the motivation of the sheriff and the county in proposing and enacting the ordinance. Goldie acknowledges such an inquiry is not permitted (*County of Los Angeles* v. *Superior Court* (1975) 13 Cal.3d 721, 727 [119 Cal.Rptr. 631, 532 P.2d 495]; *Hadacheck* v. *Alexander* (1915) 169 Cal. 616, 617 [147 P. 259]) and eschews any interest in official motivation. Goldie's lawsuit and its related efforts at discovery are predicated on the theory that the regulated activities at its picture arcade are protected by the First Amendment and the ordinance therefore must be narrowly and explicitly drawn and necessary to further a legitimate governmental interest (see *People* v. *Glaze* (1980) 27 Cal.3d 841, 846-847 [166 Cal.Rptr. 859, 614 P.2d 291]). Goldie therefore seeks to discover evidence to establish the lack of necessity for the ordinance by showing that conduct "offensive, dangerous to others and even unlawful" has not and therefore will not occur in enclosed arcade booths in Sacramento County notwithstanding that it has been judicially determined to be foreseeable in enclosed arcade booths in other locations in this state (see *People* v. *Perrine* (1975) 47 Cal.App.3d 252, 258 [120 Cal.Rptr. 640]; *EWAP, Inc.* v. *City of Los Angeles* (1979) 97 Cal.App.3d 179, 188-190 [158 Cal.Rptr. 579] *DeMott* v. *Board of Police Comrs.* (1981) 122 Cal.App.3d 296, 300-302 [175 Cal.Rptr. 879]; see also *Ellwest Stereo Theatres, Inc.* v. *Wenner* (9th Cir. 1982) 681 F.2d 1243, 1246-1247, upholding a similar Phoenix, Arizona, ordinance).

■ The Sacramento County ordinance at issue in the underlying action duplicates part of an ordinance which was before the court in *EWAP, Inc.* v. *City of Los Angeles, supra,* 97 Cal.App.3d 179, on an appeal from a preliminary injunction restraining enforcement. It is a content-neutral regulation of the time, place, and manner of protected speech, not a direct abrogation or infringement of First Amendment rights. (*EWAP, supra,* 97 Cal.App.3d at p. 189; *People* v. *Glaze, supra,* 27 Cal.3d at p. 848; *DeMott, supra,* 122

---

[2]Defendants' moving papers in the trial court also contain a vague assertion that "some matters," otherwise unspecified, are confidential. However, defendants made no reference to either the absolute or the conditional privilege of Evidence Code section 1040 (see *Shepherd* v. *Superior Court* (1976) 17 Cal.3d 107, 123 [130 Cal.Rptr. 257, 550 P.2d 161]) and failed to identify which of the required documents are considered confidential and thus privileged. Further, consideration of that issue at this point is thus premature.

In the trial court defendants did not challenge the requests for permits or licenses or for ordinances, rules and regulations relevant to adult bookstores on the ground that such information is equally available to both parties. (See *Greyhound Corp.* v. *Superior Court* (1961) 56 Cal.2d 355, 383-384 [15 Cal.Rptr. 90, 364 P.2d 266].) We thus do not consider any such issue.

Cal.App.3d at p. 302.) The appropriate test of constitutional fidelity is the one articulated in *United States* v. *O'Brien* (1968) 391 U.S. 367, 377 [20 L.Ed.2d 672, 680, 88 S.Ct. 1673]. ■ A governmental regulation is sufficiently justified, despite its incidental impact upon First Amendment interests, "if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction of alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." (*United States* v. *O'Brien, supra,* 391 U.S. at p. 377 [20 L.Ed.2d at p. 680]; *Young* v. *American Mini Theatres* (1976) 427 U.S. 50, 79-80 [49 L.Ed.2d 310, 331, 96 S.Ct. 2440]; see also *People* v. *Glaze, supra,* 27 Cal.3d at pp. 844, fn. 3, 845-846, fn. 5; *DeMott* v. *Board of Police Comrs.*, *supra*; and *Ellwest Stereo Theatres, Inc.* v. *Wenner, supra,* 681 F.2d 1243.)

■ The prohibition of enclosed or concealed booths in picture arcades easily passed the constitutional test in *EWAP* and *Ellwest.* Both courts quoted *People* v. *Perrine, supra,* 47 Cal.App.3d at page 258: "A picture arcade is a business, carried on in a place which the public generally is invited to enter and use. Since it is a place of entertainment, its patrons are not expected to enter with the solemnity of a business visitor at a mercantile establishment. Ordinarily those entering a picture arcade are seeking amusement, relaxation or excitement, possibly sexual stimulation or gratification, depending on the taste or mood of the individual and the kind of pictures exhibited. Among such visitors it is foreseeable that some will be predisposed to conduct which is offensive, dangerous to others and even unlawful. The potential for misuse of the premises, for law violations, and for bodily harm to law-abiding patrons, is obvious, as is the concomitant need for continuous supervision." (*EWAP, Inc.* v. *City of Los Angeles, supra,* 97 Cal.App.3d at pp. 189-190; *Ellwest Stereo Theatres, supra,* 681 F.2d at p. 1246.)

Goldie asserts the local ordinance in question must be considered in the context of conditions in Sacramento County. (See *E & B Enterprises* v. *City of University Park* (N.D.Tex. 1977) 449 F.Supp. 695; *Bayside Enterprises, Inc.* v. *Carson* (M.D.Fla. 1978) 450 F.Supp. 696.) As we read *EWAP, DeMott,* and *Ellwest,* however, the existence of enclosed booths and the foreseeability of dangerous and unlawful conduct therein provides the required factual support for the ordinance in constitutional terms. (See also *Glaze, supra,* 27 Cal.3d at p. 848.) Since the ordinance is directed at reducing the potential harm to the public from such threatened conduct, and such conduct implicates a substantial governmental interest encompassed by the police power and unrelated to the suppression of free expression, no more need be shown to meet the *O'Brien* criteria.

At best, the materials Goldie seeks to discover would yield information as to the magnitude of the threatened harm in Sacramento County by establishing the

frequency of previous incidents in that locale. The degree of threat that the operation of a business presents to the tranquility, good order, and well-being of the community at large is relevant, however, only to the extent that it establishes a " 'patent relationship between the regulations and the protection of the public health, safety, morals, or general welfare. . . . ' " (*People* v. *Glaze, supra,* 27 Cal.3d at p. 845.) In this case, that patent relationship is established by the existence of enclosed sex film booths in a picture arcade.

Goldie asserts that the identical ordinance must be tested anew each time it is enacted by a different governmental entity by establishing the actual existence of local conditions which would justify it. Goldie's thesis would deny to lawmakers in one locale the benefit of the wisdom and experience of lawmakers in another community, no matter how similar the circumstances; it would, as it were, require the reinvention of the wheel countless times over when mere access to common knowledge would render the considerable effort involved unnecessary. In dealing with closed booths in picture arcades, lawmakers need not blink the obvious. It cannot seriously be maintained that patrons of Sacramento County adult picture arcades do not to some degree sufficient to justify governmental concern share the proclivities of their counterparts in Los Angeles and Phoenix.[3] Reasonable anticipation of such problems is itself sufficient to justify the official reaction embodied in chapter 9.87 of the Sacramento County Code. (*EWAP, supra,* 97 Cal.App.3d. at p. 190.) Defendants are thus entitled to a protective order to prevent useless and oppressive depositions. (Code Civ. Proc., § 2019, subd. (b)(1).)

■ Defendants' writ petition also includes an allegation of error in the trial court's imposition of a stay of enforcement of the ordinance as to plaintiff, pending our resolution of the discovery controversy. However, a stay of enforcement of an ordinance in the context of injunctive relief is a matter within the discretion of a trial court. (See *DeMott* v. *Board of Police Comrs., supra,* 122 Cal.App.3d at pp. 300-301.) In this case, the delay in adjudication on the merits was caused by defendants' desire to seek review of the denial of their

---

[3]If more is required, a reading of *People* v. *Adult World Bookstore* (1980) 108 Cal.App.3d 404 [166 Cal.Rptr. 519], should suffice. There the Sacramento County District Attorney's complaint for abatement of two so-called adult bookstores incorporated the declarations of Sacramento vice unit officers who had repeatedly visited the bookstores over a period of several months. The declarations reported "instances of masturbation and oral copulation observed by them through openings (glory holes), in the partitions between certain of the booths. The officers further reported invitations to them from male patrons (the evidence does not suggest the presence at any time of female patrons), to share booths for the purpose of engaging in homosexual activities, verbal and nonverbal invitations for the performance of sexual acts through the partition openings, a bulletin board near the entrances to the booths upon which were pinned 3″ x 5″ cards containing written solicitations by individuals for sexual acts including one advertisement for sexual services to be performed outside the store, an instance of an employee of defendants warning patrons within the store of the potential presence of a police officer, and an instance of posted instructions on the outer side of a door of one booth pertaining to the proper signal for a specific form of sexual activity." (At p. 407.)

motion for a protective order. The stay merely preserved the status quo until that could be accomplished. There was no abuse of discretion in such circumstances.

Let a writ of mandate issue directing the trial court to grant defendants' motion for a protective order to the extent required by the views expressed in this opinion. The alternative writ, having served its purpose, is discharged. The stay of discovery heretofore issued is dissolved.

Each party is to bear its own costs of these proceedings.

Regan, J., concurred.

**SPARKS, J.**—I concur in the majority opinion insofar as it concludes that petitioners assert that there is an inherent relationship between the regulation of booths in picture arcades where sexually explicit films are shown and the protection of the public health, safety, morals and general welfare. So viewed, the ascertainment of the "factual basis . . . and the need for the ordinance," sought by Goldie in these depositions, is unnecessary. This discovery attempt therefore can only be described as an improper attempt to probe the motivation of the sheriff and the county in proposing and enacting the ordinance.

But petitioners cannot have it both ways. They cannot now claim that the factual basis for this ordinance in Sacramento County is irrelevant (and hence not discoverable) and later seek to justify the enactment at trial by proof of unlawful incidents at picture arcades in Sacramento County. The need for regulation of picture arcades, like that of drugs, alcohol and prostitution, is either self-evident or it is not. Petitioners claim that it is and having staked their claim on that ground, there is where the legal battle must be fought.

Code of Civil Procedure section 1987.1 authorizes the trial court to issue protective orders, either by directing compliance with the subpoenas "upon such terms or conditions as the court shall declare" or by making "any other order as may be appropriate to protect the parties, the witness, or . . . from unreasonable or oppressive demands . . . . " I would issue the writ directing petitioners either to comply with the subpoenas or, at their election, to decline upon the condition that they be precluded from introducing any evidence of the nature sought in the subpoenas.

A petition for a rehearing was denied November 16, 1982. Sparks, J., was of the opinion that the petition should be granted. The petition of real party in interest for a hearing by the Supreme Court was denied December 15, 1982.