[Civ. No. 58388. Second Dist., Div. Three. Jan. 26, 1981.]

ROBERT PRINGLE et al., Plaintiffs and Appellants, v.
CITY OF COVINA, Defendant and Respondent.

## COUNSEL

Larry J. Roberts, Barry A. Fisher and Fred Okrand for Plaintiffs and Appellants.

Norman G. Oliver, City Attorney, Ronald J. Einboden, Assistant City Attorney, and Oliver, Stoever & Laskin for Defendant and Respondent.

## OPINION

**POTTER, Acting P. J.**—Plaintiffs Robert Pringle, operator of the Covina Cinema (hereafter Cinema), and Darlene Pritchard, a patron of the Cinema, appeal from the denial of a preliminary injunction enjoining defendant City of Covina from "arresting or prosecuting or instituting civil actions" against the Cinema under its adult entertainment zoning ordinance.

The Cinema is a motion picture theatre in Covina. In 1977, the Cinema offered a repertory theatre program consisting of a variety of films, including an occasional showing of films containing sexually explicit matter which consequently were rated "X" by the Motion Picture Association of America.[1]

---

[1]The types of films exhibited included foreign films, unusual domestic films, "classics," and "cult" films. At the July 25, 1977, city council meeting, the then theatre operators (assignors of the present operator Pringle) testified that they only showed "X-Rated" films rated by the Motion Picture Association of America, had shown 300 films of which only 7 were "X-Rated" (about 5 percent of their programming) and each of these films were from major distributors and had played in every area around

On July 14, 1977, the city manager wrote a letter to the Cinema expressing the community's concern regarding the exhibition of "X-Rated" films. Then, on July 18, 1977, the city council instructed the city attorney to prepare an interim emergency ordinance prohibiting "adult" films in the city while zoning regulation of various "adult" land uses could be studied. On July 25, the interim ordinance was unanimously adopted.

The Covina Cinema continued, after the adoption of the interim ordinance, to show the films already on its calendar, including on July 26, 1977, the "X-Rated" films "Emanuelle" and "The Joys of a Woman." Members of the Covina Police Department viewed the films and prepared misdemeanor charges against the theatre management which were forwarded to the Los Angeles County District Attorney's office; but no legal proceedings were ever initiated.

In August 1977, the Cinema manager announced that no more "X-Rated" films would be shown after the expiration of the existing calendar on September 6. Unfavorable publicity, generated by the actions of city officials, had discouraged patrons from attending the Cinema and made the repertory film policy economically unrewarding.

In September 1977, Pringle became the lessee and operator of the Cinema.

In June 1978, defendant enacted a comprehensive zoning ordinance[2] prohibiting the location of "adult entertainment businesses" within 500 feet of a residential area and other specified uses. The Cinema is located within that distance of such uses. The ordinance declares that its purpose is "to insure that [the] adverse effects [arising from their 'serious objectionable operational characteristics'] will not contribute to the blighting or downgrading of the surrounding neighborhood and will not unreasonably interfere with or injure nearby properties."

---

Covina. According to plaintiffs' verified complaint, during the period from July 13, 1977, to September 6, 1977 (around the time of the enactment of the first interim ordinance), only 7 of 84 films (8.3 percent) were rated "X."

[2]Ordinance No. 1386 (adopted June 19, 1978) which superseded the 1977 interim ordinance and added provisions to title 17 of the Covina Municipal Code was in force when the preliminary injunction was denied. While this appeal was pending, defendant, on September 4, 1979, adopted ordinance No. 1438, amending title 17. This later version is substantially identical to the earlier one except for the deletion of a requirement

An adult motion picture theatre is defined as "an enclosed building with a capacity of fifty or more persons *used* for presenting material *distinguished or characterized* by an *emphasis* on depicting or describing 'Specified Sexual Activities' or 'Specified Anatomical Areas'."[3] (Covina Mun. Code, § 17.04.026.2.) (Italics added.)

Plaintiffs instituted this action (42 U.S.C. § 1983) for declaratory and injunctive relief, alleging that the ordinance violated federal and state guarantees of freedom of speech, due process and equal protection. They claimed that the ordinance was unconstitutional on its face and, as construed to apply "to the operation of a neighborhood theatre which shows a variety of films including a few films which, although not obscene, explicitly depict sexual activity arguably within the scope of the ordinance." They further argued that the terms "distinguished or characterized by an emphasis" and "used" were too vague and chilled freedom of expression.

In their verified complaint, plaintiffs sought "temporary injunctive relief in order [to] exhibit and view constitutionally protected films according to their own taste and judgment." They alleged that "[i]f not restricted by the...Ordinance, [Pringle] would occasionally exhibit films which, although not obscene, explicitly depict sexual activity" and Pritchard "would again view on a selective basis films at the Covina Cinema which explicitly depict sexual activity...."

In his declaration, Pringle stated that the "Ordinance prevents [him] from selecting for exhibition films which [he] would otherwise choose,

for conditional use permits. All references are to the present version, since "[u]nder settled principles, [that] version ... is the relevant legislation for purposes of this appeal. 'It is...an established rule of law that on appeals from judgments granting or denying injunctions, the law to be applied is that which is current at the time of judgment in the appellate court.'" (*Kash Enterprises, Inc. v. City of Los Angeles* (1977) 19 Cal.3d 294, 306, fn. 6 [138 Cal.Rptr. 53, 562 P.2d 1302].)

[3]The Municipal Code specifies anatomical areas and sexual activities as follows: "'Specified Anatomical Areas' include the following: human genitals, pubic region, buttocks, and female breasts below a point immediately above the top of the areola." (§ 17.04.529.)
"'Specified Sexual Activities' includes the following:
"(a) The fondling or other touching of human genitals, pubic region, buttocks, or female breasts;
"(b) Ultimate sex acts, normal or perverted, actual or simulated, including intercourse, oral copulation, sodomy;
"(c) Masturbation; and
"(d) Excretory functions as part of or in connection with any of the activities set forth in (a) through (c) above." (§ 17.04.530.)

because [he] cannot know what films will bring the...CINEMA within the definition of an Adult Motion Picture Theater...and consequently subject [him] to civil and criminal sanctions for ... violation of the Ordinance"; the Covina police have threatened to arrest him for violating the ordinance if an "X-Rated" film were shown; and he desires to select for exhibition at the Cinema a variety of films, including some which are rated "X" but would not generally be considered "hard-core" pornography.

In support of their motion for a preliminary injunction, plaintiffs pointed out that the relief they sought was limited. It "would apply only to the Covina Cinema [so that] the zoning scheme of the city would otherwise remain intact," and "would simply restore the status quo which existed prior to the adoption of the ordinance when the Covina Cinema did exhibit on an occasional basis films such as 'Last Tango in Paris.'" The only "'X-Rated' films that would be presented would be serious, artistic 'X-Rated' films of the variety previously exhibited by the Covina Cinema" and these "would constitute only a small portion of the total program of the theater."

In its opposition papers, defendant city contended that the ordinance was a valid zoning regulation under *Young* v. *American Mini Theatres* (1976) 427 U.S. 50 [49 L.Ed.2d 310, 96 S.Ct. 2440]. Defendant claimed that *Young* had addressed all plaintiffs' vagueness objections except the meaning of the word "used" in the adult theatre definition. Defendant construed "use" as any "[o]ne showing of a film described in the ordinance." Defendant also argued that any uncertainty in the ordinance was readily subject to severance or a narrowing construction by the court.

The superior court denied plaintiffs' request for a preliminary injunction. This appeal followed.

### Contention

Plaintiffs contend that the preliminary injunction should have been granted because the ordinance contains impermissibly vague terms which chill freedom of expression by deterring the exhibition of films that may or may not be within its ambit.[4]

---

[4]Our disposition renders it unnecessary to reach at this time plaintiffs' other constitutional challenges of (1) impermissible motivation, (2) severe restriction of access to

*Discussion*

*Summary*

The superior court improperly denied a preliminary injunction. The definition of an adult movie theatre contains vague statutory language. To preserve the ordinance's validity, it must be narrowly construed to apply only to theatres in which the preponderant programming consists of films in which the dominant theme is the depiction or description of the ordinance's enumerated sexually explicit activities. However, since our opinion placing such a narrow construction upon the ordinance will adequately protect plaintiffs' pending trial, we need not reverse the judgment.

*The Ordinance Must Be Narrowly Construed*

 It is a basic principle of due process that an ordinance is unconstitutionally vague if its prohibitions are not clearly defined. (See *Grayned* v. *City of Rockford* (1972) 408 U.S. 104, 108 [33 L.Ed.2d 222, 227, 92 S.Ct. 2294].) There must be ascertainable standards. "Men of common intelligence cannot be required to guess at the meaning of the enactment. [Fn. omitted.]" (*Winters* v. *New York* (1948) 333 U.S. 507, 515 [92 L.Ed. 840, 849-850, 68 S.Ct. 665].)

Moreover: "The general test of vagueness applies with particular force in review of laws dealing with speech. '[S]tricter standards of permissible statutory vagueness may be applied to a statute having a potentially inhibiting effect on speech; a man may the less be required to act at his peril here, because the free dissemination of ideas may be the loser.'" (*Hynes* v. *Mayor of Oradell* (1976) 425 U.S. 610, 620 [48 L.Ed.2d 243, 253, 96 S.Ct. 1755].)

As the United States Supreme Court has pointed out: "[W]here a vague statute 'abut[s] upon sensitive areas of basic First Amendment freedoms,' it 'operates to inhibit the exercise of [those] freedoms.' Uncertain meanings inevitably lead citizens to "'steer far wider of the unlawful zone'' . . . than if the boundaries of the forbidden areas were

protected speech, and (3) improper classification of speech on the basis of content without a compelling interest in view of the limited nature of the preliminary relief sought. Moreover, those contentions involve factual issues which necessitate a trial on the merits.

clearly marked.' [Fns. omitted.]" (*Grayned* v. *City of Rockford, supra,* 408 U.S. at p. 109 [33 L.Ed.2d at p. 228].)

Similarly, our California Supreme Court has observed: "[V]ague statutory language, resulting in inadequate notice of the reach and limits of the statutory proscription, poses a specially serious problem when the statute concerns speech, for uncertainty concerning its scope may then chill the exercise of protected First Amendment rights. (See *Lewis* v. *City of New Orleans* (1974) 415 U.S. 130, 133-134 [39 L.Ed.2d 214, 219-220, 94 S.Ct. 970]; *Gooding* v. *Wilson* (1972) 405 U.S. 518, 521 [31 L.Ed.2d 408, 413, 92 S.Ct. 1103].)" (Pryor v. *Municipal Court* (1979) 25 Cal.3d 238, 251 [158 Cal.Rptr. 330, 599 P.2d 636].)[5]

■ A conclusion, however, that the language of the ordinance does not meet constitutional standards of specificity is not necessarily dispositive of the case. (*Pryor* v. *Municipal Court, supra,* 25 Cal.3d at p. 253.) In *Young* v. *American Mini Theatres, supra,* 427 U.S. 50, 61 [49 L.Ed.2d 310, 320, 96 S.Ct. 2440], in discussing a vagueness attack on the Detroit ordinance which contained an identical definition of an adult theatre, the court said that it saw "no reason why the ordinances were not 'readily subject to a narrowing construction by the state courts.'"

We must construe this legislation, if reasonably possible to preserve its constitutionality. (*Kash Enterprises Inc.* v. *City of Los Angeles, supra,* 19 Cal.3d 294, 305.) As our Supreme Court explained in *Pryor, supra,* 25 Cal.3d at page 253: "The judiciary bears an obligation to 'construe enactments to give specific content to terms that might otherwise be unconstitutionally vague.' (*Associated Home Builders etc., Inc.* v. *City of Livermore* (1976) 18 Cal.3d 582, 598 [135 Cal.Rptr. 41, 557 P.2d 473, 92 A.L.R.3d 1038].) Thus we have declared that 'A statute will not be held void for uncertainty if any reasonable and practical construction can be given its language.' (*American Civil Liberties Union* v. *Board of Education* (1963) 59 Cal.2d 203, 218 [28 Cal.Rptr. 700, 379 P.2d 4].) If by fair and reasonable interpretation we can construe [this ordinance] to sustain its validity, we must adopt such interpretation . . . ."

---

[5]In this respect, we are also mindful that article I, section 2 of the California Constitution has been construed as even more protective of speech than the United States First Amendment. (See *People* v. *Glaze* (1980) 27 Cal.3d 841, 844, fn. 2 [166 Cal.Rptr. 859, 614 P.2d 291]; *Wilson* v. *Superior Court* (1975) 13 Cal.3d 652, 658 [119 Cal.Rptr. 468, 532 P.2d 116].)

■ With these principles in mind, we now consider plaintiffs' contention that the Covina ordinance contains impermissibly vague terms and therefore "chills freedom of expression by deterring the exhibition of films that may or may not be within its ambit."

We first turn to plaintiffs' argument that they cannot determine by any objective standard when a film is "distinguished or characterized by" an "emphasis" on the enumerated sexual activities. In the absence of a limiting interpretation, there is merit to plaintiffs' claim, especially in view of the history of this ordinance. Pringle declared that he had been warned by Covina police that any "X-Rated" film would violate the ordinance. Defendant in its answer denied that it construed the ordinance to prohibit the showing of all "X-Rated" films. Yet defendant has not offered any alternative construction which could give further guidance to the Cinema and eliminate uncertainty as to what type of films can be shown without risking a misdemeanor prosecution.

Instead, defendant claims that plaintiffs' vagueness arguments were answered in *Young* v. *American Mini Theatres, supra*, 427 U.S. 50, and *Walnut Properties, Inc.* v. *City Council* (1980) 100 Cal.App.3d 1018 [161 Cal.Rptr. 411]. We disagree. The majority in *Young* held that the Detroit theatres which "propose[d] to offer adult fare on a regular basis" (427 U.S. at p. 59 [49 L.Ed.2d at p. 319]) and had not "indicated any plan to exhibit pictures even arguably outside the coverage of the ordinances" (*id.*, at p. 59, fn. 16 [49 L.Ed.2d at p. 319]) lacked standing to raise the vagueness issue.

The court in *Young* said: "We find it unnecessary to consider the validity of [the vagueness] arguments in the abstract. For even if there may be some uncertainty about the effect of the ordinances on other litigants, they are unquestionably applicable to these [litigants]." (*Id.*, at pp. 58-59 [49 L.Ed.2d at p. 319].) And "since the limited amount of uncertainty in the ordinances is easily susceptible of a narrowing construction, we think this is an inappropriate case in which to adjudicate the hypothetical claims of persons not before the Court." (*Id.*, at p. 61 [49 L.Ed.2d at p. 320]).

*Walnut* simply followed *Young* in finding that a theatre which conceded that "it did show and plans to continue showing movies which fall within the ambit of the ordinance" "lack[ed] the requisite standing to challenge the ordinance for vagueness or overbreadth." (100 Cal.App.

3d at p. 1021; see also *Northend Cinema, Inc.* v. *City of Seattle* (1978) 90 Wn.2d 709 [585 P.2d 1153, 1157]; *Airport Book Store, Inc.* v. *Jackson* (1978) 242 Ga. 214 [248 S.E.2d 623, 628].)

Here, however, we clearly are presented with an actual, not hypothetical, claim of uncertainty deterring the exercise of protected speech. The litigants herein are a neighborhood theatre operator and patron who wish occasionally to exhibit and view artistic serious films which have been rated "X" by the Motion Picture Association of America. However, rather than risk prosecution, the Cinema is deterred from showing any "X-Rated" film, no matter how nationally recognized, as part of a repertory program.

We must, therefore, attempt to eliminate the uncertainty by narrowly construing the language "distinguished or characterized by an emphasis" in order to sustain the statute's validity. Dictionary definitions can be helpful. A common meaning of the word "distinguished" is "conspicuous; marked." (Random House Dict. (1966) p. 417.) The word "characterize" has been defined as "to describe the *essential* character or quality of" (Webster's New Internat. Dict. (3d ed. 1967) p. 376; italics added); and "character" has been described as "[t]he *dominant* quality" (Webster's New World Thesaurus (paperback ed., 1974) p. 61; italics added). Moreover, "emphasis" has been defined as "stress or relative importance given to a certain part or feature of a literary work (as by its *prominent position in the whole* or its fullness of presentation)." (Webster's New Internat. Dict., *supra*, pp. 742-743; italics added.)

By combining these definitions, we construe the phrase "distinguished or characterized by an emphasis" to refer to the dominant or essential theme. Accordingly, adult films under the ordinance include only films whose dominant or predominant character and theme is the depiction of the enumerated sexual activities or anatomical areas.[6]

*Hart Book Stores, Inc.* v. *Edmisten* (4th Cir. 1979) 612 F.2d 821, 834, pointed out that such language would withstand a vagueness challenge, stating: "The reference to the 'predominant' character of publications or films has been sustained in *Ward* v. *Illinois*, 431 U.S.

---

[6]For example, in *Northend Cinema, Inc.* v. *City of Seattle, supra*, the Washington Supreme Court noted that films being shown at the theatres "are one sequence of explicit sexual activity after another, almost completely uninterrupted by any plot." (585 P.2d at p. 1155, fn. 1.) Such a film clearly would fall within the ambit of the Covina ordinance.

767, 770-73, 97 S.Ct. 2085, 52 L.Ed.2d 738 (1977) [and] is like the 'dominant theme' test in *Roth* v. *United States*, 354 U.S. 476, 489, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957) . . . ."

■ We next consider the meaning of the word "used" in the Covina ordinance's definition of an adult theatre as a building "used for presenting" sexually explicit material. The ambiguity lies in the ordinance's failure to indicate what proportion of a theatre's programming would constitute "use."

As was noted by the Supreme Courts of Colorado and Maine: "'The verb "use" or "used" has two meanings recognized by all lexicographers and unconsciously differentiated in common speech: (1) To employ or be employed or occupied. In this sense the word would include a single isolated instance of use. (2) To practice customarily or (in the case of a place or thing) to be the subject of customary practice, employment or occupation.'" (*Murphy* v. *Traynor* (1943) 110 Colo. 466 [135 P.2d 230, 232]; *State* v. *Gastonguay* (1919) 118 Me. 31 [105 A. 402, 403].)

In the trial court, defendant responded to plaintiffs' vagueness attack by claiming that a single exhibition of any one adult film constituted a "use" in violation of the ordinance. But, such an interpretation would necessarily render this ordinance constitutionally invalid. "Motion pictures, the medium of expression involved here, are fully within the protection of the First Amendment." (*Young* v. *American Mini Theatres, supra*, 427 U.S. at pp. 76-77 [49 L.Ed.2d at p. 330] (conc. opn. of Powell, J.).) Reasonable regulations of the time, place and manner of protected speech are permitted by the First Amendment where those regulations are necessary to further significant governmental interests. (*Id.*, at p. 63, fn. 18 [49 L.Ed.2d at p. 322].) Thus, this regulation can only be justified "if it is within the constitutional power of the Government; if it furthers an important or substantial governmental interest; if the governmental interest is unrelated to the suppression of free expression; and if the incidental restriction on alleged First Amendment freedoms is no greater than is essential to the furtherance of that interest." (*United States* v. *O'Brien* (1968) 391 U.S. 367, 377 [20 L.Ed.2d 672, 680, 88 S.Ct. 1673]; see also *Young, supra*, 427 U.S. at pp. 79-80 [49 L.Ed.2d at pp. 331-332] (conc. opn. of Powell, J.).)

A zoning regulation based on a "single isolated instance of use" would fail this test. It could not be "justified by the city's interest in

preserving the character of its neighborhoods." (*Id.*, at p. 71 [49 L.Ed.2d at p. 326].) While defendant certainly has an important and substantial interest in maintaining the stability of its neighborhoods, we cannot conclude that defendant could reasonably have determined that a single showing of a sexually explicit film produces adverse "secondary effect[s]" destructive of the general quality of life in the neighborhood. (See *Young, supra*, 427 U.S. at pp. 71, fn. 34, 80 [49 L.Ed.2d at pp. 326, 331-332] (conc. opn. of Powell, J.).) Indeed, we would have to conclude that "the ordinance was not rationally tailored to support its asserted purpose" (*id.*, at p. 83 [49 L.Ed.2d at p. 334]) as a necessary zoning regulation to prevent neighborhood blight but was instead a "misconceived attempt directly to regulate content of expression" by "using the power to zone as a pretext for suppressing expression" (*id.*, at p. 84 [49 L.Ed.2d at p. 334]).

To preserve the ordinance's validity, the term "used" must, therefore, be construed to mean "[t]o practice customarily." ▮ ▮ ▮ ▮ ▮ "Customarily" means "*usually*, habitually, according to the customs, general practice or usual order of things, regularly." (Black's Law Dict. (4th ed. 1951) p. 462; italics added.)[7]

Moreover, "usually" is commonly defined as "more often than not; most often: as a rule: ORDINARILY." (Webster's New Internat. Dict., *supra*, p. 2524.) Accordingly, a *preponderance* of the films shown must have as their dominant theme the depiction of the ordinance's enumerated sexual activities in order for a theatre to be deemed an "adult motion picture theatre" within the ambit of the zoning ordinance.

*A Preliminary Injunction Should Have Been Granted*

Plaintiffs alleged that the Cinema would only present serious, or artistic "X" rated films of the variety it previously exhibited and these

[7]Since a violation of the ordinance is a misdemeanor, this conclusion is also compelled by the established policy to construe a penal statute as favorably to the person facing prosecution as its language and the circumstances of its application reasonably permit; the Cinema is, therefore, entitled to the benefit of every reasonable doubt as to the true interpretation of words or the construction of language used in the ordinance. (See *People* v. *Walker* (1976) 18 Cal.3d 232, 242 [133 Cal.Rptr. 520, 555 P.2d 306].)

This interpretation comports with the definitions in defendant's Municipal Code zoning law of "use" (§ 17.04.606) and "used" (§ 17.04.609) which read as follows: "'Use' means the purpose for which land and/or building is erected, arranged, designed or intended, or for which land and/or building is or may be occupied or maintained." (§ 17.04.606.)

"'Used' includes 'arranged for,' 'designed for,' 'occupied or intended to be occupied for.'" (§ 17.04.609.)

films would only constitute a small portion of its program. As we have construed this ordinance, it does not apply to the Cinema's proposed programming. Lacking such an authoritative restrictive interpretation, plaintiffs suffered irreparable injury pending trial since the ordinance deterred the exhibition of these films. The superior court, therefore, should have narrowly construed the ordinance and granted the limited preliminary injunction plaintiffs sought.

In view of our construction of the statute, however, a preliminary injunction pending trial is no longer necessary. As a result of this opinion, the ordinance cannot be enforced against the Cinema unless, contrary to its representations and previous policy, the Cinema presents a preponderance of films in which the dominant theme is the depiction of the ordinance's enumerated sexual activities.

The judgment (order) is remanded to the superior court for further proceedings consistent with the views expressed herein.

Cobey, J., and Allport, J., concurred.

A petition for a rehearing was denied February 20, 1981, and respondent's petition for a hearing by the Supreme Court was denied March 25, 1981.