[Civ. No. 28741. Fourth Dist., Div. One. Oct. 27, 1983.]

STRAND PROPERTY CORPORATION et al.,
Plaintiffs and Appellants, v.
THE MUNICIPAL COURT FOR THE SAN DIEGO JUDICIAL
DISTRICT OF SAN DIEGO COUNTY, Defendant and Respondent;
THE PEOPLE, Real Party in Interest and Respondent.

**COUNSEL**

Thomas F. Homann and Haverstick & Homann for Plaintiffs and Appellants.

No appearance for Defendant and Respondent.

John W. Witt, City Attorney, Ted Bromfield, Chief Deputy City Attorney, and Leslie J. Girard, Deputy City Attorney, for Real Party in Interest and Respondent.

**OPINION**

**COLOGNE, J.**—Strand Property Corporation, Jimmie Johnson, Charles Boeckman and Freddie Bantu were charged by a complaint with violating

San Diego Municipal Code (Code) section 101.1810, which prohibits "the establishment . . . or transfer of ownership or control of" an adult motion picture theater within 1,000 feet of a residential zone, a church, school, public park, social welfare institution, or another adult entertainment business.[1]

An "adult motion picture theater" is defined by the Code as "[a]n establishment . . . in which a substantial portion of the total presentation time is devoted to the showing of material which is distinguished or characterized by an emphasis upon the depiction or description of 'specified sexual activities' [defined in § 101.0801.2[2]] or 'specified anatomical areas' [defined in § 101.1801.1[3]] for observation by patrons." (Code § 101.1801.4, as

---

[1]San Diego Municipal Code section 101.1810 reads:

"No person shall cause or permit the establishment, substantial enlargement or transfer of ownership or control of any of the following establishments if such establishment is within 1000 feet of another such business, 1000 feet of any residential zone, or within 1000 feet of any church, school, public park or social welfare institution within the City of San Diego.

"An establishment listed in this section shall not be permitted to be established, enlarged or transferred unless the provisions of the zone in which the site or proposed site is located permits such a use.

"A. Adult Bookstore
"B. Adult Motion Picture Theater
"C. Adult Mini-Motion Picture Theater
"D. Adult Arcade
"E. Adult Drive-In Theater
"F. Adult Cabaret
"G. Adult Motel
"H. Adult Theater
"I. Adult Model Studio
"J. Sexual Encounter Center
"K. Body Painting Studio
"L. Massage Parlor
"M. Any other business which involves 'specified sexual activities' or display of 'specified anatomical areas.'" (As amend. 5/26/81 by Ord. 0-15509 N.S.)

[2]Curiously numbered Code section 101.0801.2 reads:

"As used herein, 'specified sexual activities' shall mean and include any of the following:

"(a) The fondling or other touching of human genitals, pubic region, buttocks, anus or female breasts;

"(b) Sex acts, normal or perverted, actual or simulated, including intercourse, oral copulation or sodomy;

"(c) Masturbation, actual or simulated; or

"(d) Excretory functions as part of or in connection with any of the activities set forth in (a) through (c) above."

[3]Code section 101.1801.3 reads:

"As used herein, 'specified anatomical areas' shall mean and include any of the following:

"(a) Less than completely and opaquely covered human genitals, pubic region, buttocks, anus or female breasts below a point immediately above the top of the areolae; or

"(b) Human male genitals in a discernibly turgid state, even if completely and opaquely covered."

amend. 1/2/79 by Ord. 12539 N.S.; see now § 101.1801.3, subd. B, as amend. 9/13/82 by Ord. O-15810 N.S.)

By demurrer in municipal court, Strand challenged the ordinance for violating the First Amendment and for unconstitutionally establishing a monopoly for existing businesses. The municipal court overruled Strand's demurrer. Strand then brought a motion to dismiss which was denied as being without statutory basis. Following these denials, Strand sought a writ of prohibition in superior court. The superior court denied the writ and Strand appeals.[4]

■ Strand contends the ordinance is unconstitutional because its restrictions impose a substantial and significant burden on the exercise of a First Amendment right without furthering a sufficiently significant city interest.

In *Young* v. *American Mini Theatres* (1976) 427 U.S. 50 [49 L.Ed.2d 310, 96 S.Ct. 2440], the United States Supreme Court upheld a Detroit ordinance very similar to the one at bar. The Supreme Court held such a dispersal regulation was justified by an interest in preserving the character of its neighborhoods. Under *American Mini Theatres,* a dispersal of adult entertainment establishments is constitutional if not motivated by an improper distaste for the speech involved, does not act to severely restrict First Amendment rights and is supported by a sufficient factual basis. (See *Developments in the Law—Zoning* (1978) 91 Harv.L.Rev. 1427, 1557-1559.)

The stated purpose of the San Diego City Ordinance is provided in Code section 101.1800, which reads as follows:

"It is the purpose of this Division to establish reasonable and uniform regulations to prevent the continued concentration of adult entertainment establishments, as defined herein, within The City of San Diego.

"It is the intent of this Division that the regulations be utilized to prevent problems of blight and deterioration which accompany and are brought about by the concentration of adult entertainment establishments."

---

[4]Effective January 1, 1983, no appeal lies from an order denying a petition for a writ of prohibition directed to a municipal court and relating to a matter pending in the municipal court (Code Civ. Proc., § 904.1, subd. (a)(4), as amend. by Stats. 1982, ch. 931 and Stats. 1982, ch. 1198). Thus, no appeal lies here. However, under the amended section this court has discretion to review such an order upon petition for an extraordinary writ. In light of the timing of the notice of appeal in this case, 62 days after the amended statute's effective date, we choose to treat the appeal as a writ petition (see *Andrus* v. *Municipal Court* (1983) 143 Cal.App.3d 1041, 1049 [192 Cal.Rptr. 341]).

The ordinance, by its language, thus does not appear to be motivated by a distaste for the speech itself, but by a desire to preserve neighborhoods, a goal upheld by the United States Supreme Court in *American Mini Theatres, supra,* 427 U.S. 50, at pages 71 to 72 [49 L.Ed.2d at page 327]. While the city did not set forth any factual basis for the ordinance, the factual basis supporting zoning laws requiring dispersal or deconcentration has been developed by testimony in other cases. Lawmakers in one locale should not be denied the benefit of the wisdom and experience of lawmakers in another community (see *County of Sacramento* v. *Superior Court* (1982) 137 Cal.App.3d 448, 455 [187 Cal.Rptr. 154]). Accordingly, contrary to Strand's contention, it was not necessary for the City of San Diego to independently establish a factual basis to support the ordinance as applied to local conditions.

Strand asserts the ordinance severely restricts First Amendment rights because its effect is to limit the availability of sites to establish new adult motion picture theaters to less than one percent of the land within the city and that a significant percentage of those sites are not suitable for adult motion picture theaters.[5]

In *Young* v. *American Mini Theatres, supra,* 427 U.S. 50, the plurality noted the Detroit dispersal ordinance was only a slight burden on the First Amendment because "[t]here are myriad locations in the City of Detroit which must be over 1000 feet from existing regulated establishments." (*Id.* at pp. 71-72, fn. 35 [49 L.Ed.2d at p. 327], quoting from the district court opinion, 373 F.Supp. 363, 370 (E.D.Mich. 1974).) However, the plurality also pointed out "[t]he situation would be quite different if the ordinance had the effect of suppressing, or greatly restricting access to, lawful speech." (*Id.* at p. 72, fn. 35 [49 L.Ed.2d at p. 327].)

Since *American Mini Theatres,* a number of courts have invalidated zoning regulations which have acted to severely restrict or eliminate access to adult entertainment. Strand cites these cases as showing the trial court erred in overruling the demurrer. Procedurally, however, all of these cases are distinguishable since none involved the review of a demurrer to a criminal complaint.[6] A demurrer lies only to correct defects appearing on the

---

[5]In its offer of proof, Strand would present maps showing areas available for adult motion picture theaters to be substantially limited to unsuitable locations. It argues it would be required to place the theaters in already developed commercial property, heavy industrial areas, warehouse districts and parking lots.

[6]*Schad* v. *Mount Ephraim* (1981) 452 U.S. 61 [68 L.Ed.2d 671, 101 S.Ct. 2176] (appeal from a conviction); *Basiardanes* v. *City of Galveston* (5th Cir. 1982) 682 F.2d 1203 (suit brought by owner); *Keego Harbor Co.* v. *City of Keego Harbor* (6th Cir. 1981) 657 F.2d 94 (suit brought by theater owner); *Alexander* v. *City of Minneapolis* (D.Minn. 1982) 531 F.Supp. 1162 (suit brought by owner); *CRL Corp.* v. *Henline* (W.D.Mich. 1981) 520

face of the complaint (Pen. Code, § 1004; Witkin, Cal. Crim. Procedure, § 236, p. 220). Moreover, here there is no properly admitted evidence in the record on which to consider Strand's factual assertions. Thus, our review is limited to determining whether the ordinance is unconstitutional on its face, not whether it is unconstitutional as applied.[7]

 Strand also attacks the ordinance as being unconstitutionally restrictive in its definition of an adult motion picture theater, especially when considered in conjunction with the definition of a general motion picture theater.

An adult motion picture theater is defined as "an establishment . . . in which a *substantial portion of the total presentation time* is devoted to the showing of material which is distinguished or characterized by an emphasis upon the depiction or description of 'specified sexual activities' or 'specified anatomical areas' for observation by patrons." (Code § 101.1801.4; italics added.) A "general motion picture theater" is defined, in pertinent part, as "[a] building or part of a building intended to be used for the specific purposes of presenting entertainment as defined herein, . . . provided, however, that *any such presentations* are not distinguished or characterized by an emphasis on the depiction or description of 'specified sexual activities' or 'specified anatomical areas' in that any such depiction or description is only incidental to the plot or story line." (Code § 101.1801.15; italics added.) Strand argues these two definitions provide the exhibition of one "adult"[8] film could make the theater an "adult motion picture theater" subject to the ordinance. This, of course, would be unconstitutional since a zoning regulation based upon a single isolated presentation of an adult film would fail to further the city's asserted interest in preserving the character of its neighborhoods (*Pringle* v. *City of Covina* (1981) 115 Cal.App.3d 151, 161-162 [171 Cal.Rptr. 251]).

---

F.Supp. 760 (suit brought by owner for declaratory and injunctive relief); *Bayside Enterprises, Inc.* v. *Carson* (M.D.Fla. 1978) 450 F.Supp. 696 (suit brought by owner for declaratory and injunctive relief); *E & B Enterprises* v. *City of University Park* (N.D.Tex. 1977) 449 F.Supp. 695 (suit brought by owner).

[7]Even if we could reach Strand's factual allegations as to the limited amount of land available for the establishment of *new* adult motion picture theaters, those allegations alone would not be determinative. Before the ordinance could be invalidated for being unduly restrictive of First Amendment rights, it is necessary to know the extent of permitted, established adult motion picture theaters. It may be that the established theaters provide sufficient numbers and access for First Amendment purposes.

[8]Strand does not contend the definition of the motion pictures pertaining to the showings of an adult motion picture theater is vague. The use of "adult" films in this opinion is for the ease of the reader and means a film "distinguished or characterized by an emphasis on the depiction or description of 'specified sexual activities' or 'specified anatomical areas.'" (Code § 101.1801.4.)

In the municipal court, Strand asserted the ordinance was void for vagueness and in response, the municipal court exercised its power to subject the ordinance to a narrowing construction (see *American Mini Theatres, supra,* 427 U.S. 50, 61 [49 L.Ed.2d 310, 320-321]). Making this construction, the municipal court ruled the phrase "substantial portion of the total presentation time" referred to both an individual film and all the films presented, and concluded that both must be over 50 percent. The municipal court went on to rule that percentage of adult to nonadult films should be measured over a month-long period.[9]

We believe the only interpretation necessary is to construe the phrase "substantial portion of the total presentation time" in Code section 101.1801.4 to mean a preponderance of the total number of the films exhibited are adult films. In *Kuhns* v. *Board of Supervisors* (1982) 128 Cal.App.3d 369, at page 376 [181 Cal.Rptr. 1], we held "substantial and significant portion" lacks clarity, but if over half of the adult bookstores' stock is adult, then the adult portion is both substantial and significant; and if the board of supervisors intended a different standard, it should have said so. While the language of this ordinance does not require a finding of significant as well as substantial, we can apply the same rule of interpretation at this stage of the proceedings where we are not presented a factual setting (see *Pringle* v. *City of Covina, supra,* 115 Cal.App.3d 151, 160-161). Additionally, as determined by *Pringle* which examined an ordinance using essentially the same language as we consider here,[10] "adult films under the ordinance include only films whose dominant or predominant character and theme is the depiction of the enumerated sexual activities or anatomical areas" (115 Cal.App.3d 151, 160). Thus, to fall within the definition of an adult motion picture theater under the ordinance then applica-

---

[9]Strand asserts the municipal court's adoption of a one-month measuring period was an invalid invasion of the legislative body's province and is contrary to the face of the ordinance which appears to prohibit the showing of a single adult motion picture.

The city here failed to set any measuring period. Obviously, some measuring period is necessary. Whether a month is a long enough period depends upon how often theater programs are shown and normally changed, and how quickly the effects of an adult motion picture theater's presence is felt upon the neighborhood. We do not have a sufficient factual basis to make a precise determination and cannot say a month period was an abuse of discretion.

The amended ordinance (No. 0-15810 N.S.) adopted September 13, 1982, provides clarification of this point and states, "For purposes of this ordinance and subsections C, D, E, F, G and H a 'substantial portion of the total presentation time' shall mean the presentation of films or shows described above for viewing on more than 7 days within any 56-consecutive-day period." (Code § 101.1801.3, subd. B.) This provision is not in issue here, but we may observe it operates in aid of the Code's certainty.

[10]The ordinance considered in *Pringle* defined an adult motion picture theater as "an enclosed building with a capacity of fifty or more persons used for presenting material distinguished or characterized by an emphasis on depicting or describing 'Specified Sexual Activities' or 'Specified Anatomical Areas.'" (115 Cal.App.3d at p. 155.)

ble, a preponderance of the films shown must have as their dominant or predominant character and theme the depiction of the "specified sexual activities" or "specified anatomical areas."

Code section 101.1801.15, defining a general motion picture theater which Strand argues would make a theater subject to regulation for the showing of a single adult film, is also subject to a constitutional interpretation. It is apparent that in section 101.1801.15 the city intended to exclude from the definition of a general motion picture theater those theaters exhibiting films, etc., which would otherwise categorize the theater as an adult motion picture theater. This is shown by section 101.1801.15's use of language to describe adult films which is parallel to language used in section 101.1801.4. Strand contends the use of the phrase "any such presentations," used in the general motion picture theater definition, means any one presentation of an adult film would make the theater an adult motion picture theater. Such an interpretation, however, ignores the city's use of the plural (presentation*s*) and the obvious intent of the ordinance to apply only to adult motion picture theaters. "Any such presentations" may reasonably be construed to refer to section 101.1801.4's "substantial portion of the total presentation time" and thus act to exclude from the definition of a general motion picture theater those theaters which qualify as adult theaters. Under this construction, the ordinance is not unduly restrictive.

Strand's argument that less drastic means are available to accomplish the ordinance's objectives is similarly meritless. This case fits within the characterization of *Young* v. *American Mini Theatres, supra,* 427 U.S. 50, by the United States Supreme Court in *Schad* v. *Mount Ephraim, supra,* 452 U.S. 61, at page 76 [68 L.Ed.2d 671 at page 685], as one which does "not purport to approve the total exclusion from the city of theatres showing adult, but not obscene, materials. . . . the number of regulated establishments [is] not limited and . . . 'the situation would be quite different if the ordinance had the effect of suppressing, or greatly restricting access to, lawful speech.' 427 U.S., at 71, n. 35." The ordinance is sufficiently narrowly drawn, and fits within the holding of *American Mini Theatres, supra,* 427 U.S. 50.

The purported appeal is dismissed and the writ is denied.

Brown (Gerald), P. J., and Butler, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied January 25, 1984.