[Civ. No. 65777. Second Dist., Div. Four. Dec. 8, 1983.]

CITY OF WHITTIER, Plaintiff and Appellant, v.
WALNUT PROPERTIES, INC., Defendant and Respondent.

**COUNSEL**

J. Robert Flandrick, City Attorney, Burke, Williams & Sorensen and Virginia R. Pesola for Plaintiff and Appellant.

Stanley Fleishman for Defendant and Respondent.

OPINION

**KINGSLEY, J.**—This action was filed by City of Whittier to compel Walnut Properties, Inc., to comply with the city's zoning code that regulates "adult businesses."

FACTS

On February 7, 1978, City of Whittier adopted an amendment to its zoning regulations by Ordinance No. 2138. The code established locational regulations applicable to "adult" business establishments within the city. The code declares "adult" businesses lawfully in existence prior to the effective date of the code to be legal nonconforming uses which are subject to abatement by administrative process.

Walnut owned and operated in the City of Whittier, as part of its "Pussycat" theatre chain, what is alleged to be an adult theatre.

Pursuant to section 9322(3) the superintendent of building and safety issued to Walnut an administrative order of abatement. Walnut appealed to the city planning commission and objected to the constitutionality of the code. The planning commission issued an order of abatement. Walnut appealed to the city council, which ordered the termination of the "adult theatre" use. Walnut failed to comply and the city sued for injunctive relief.

Walnut denied it was an "adult theatre" within the ordinance and alleged that the ordinance was unconstitutional. We here determine only the issue of constitutionality. Walnut asked the court to take judicial notice of the fact that it had the only theatre in the city which allegedly is an "adult" theatre within the meaning of the ordinance.

The court found that language contained in section 9512, subdivision (2)(c) renders the code unconstitutional[1] in that the language prohibited the

---

[1]Section 9512, subdivisions (1) and (2) of code reads in its entirety as follows:

"SECTION 9512—Special Regulations—All uses subject to the provisions of this part shall comply with all of the regulations contained in this chapter, and the following regulations: ▇ (1) That prior to establishing or conducting of any adult business, a conditional use permit therefor shall be obtained, pursuant to the provisions of Part 8 of this chapter; and [¶] (2) That no adult business shall be granted a conditional use permit unless the lot upon which such business is proposed to be located: [¶] (a) Is classified in Zone C-2 or a less restrictive zone; and [¶] (b) Is not within five hundred (500) feet of any lot classified in any of the R zones; and [¶] (c) Is not within one thousand (1,000) feet of any lot upon which there is located a church, or educational institution, park or other public facility which is utilized by minors; and [¶] (d) Is not within one thousand (1,000) feet of any lot on which there is located another adult business; and [¶] (e) Is not within five hundred (500) feet of any lot upon which is located a business with a type 40, 42, 48 or 61 on-sale alcoholic beverage license. (Ord. No. 2138, & 2, 2-7-78.)"

operation of any "adult business" at any location in the city. The court concluded as follows in conclusions (1) and (2):

"1. The portion of § 9512(2)(c) of the Whittier Municipal Code specifically the words 'other public facility which is utilized by minors,' has the legal effect of prohibiting the location of any adult business on any location within the City in that, the phrase 'public facility' means, and includes, among other things, any retail commercial facility which is open to members of the public, and is utilized by minors, such as grocery stores and drug stores.

"2. The absolute prohibition of an otherwise lawful business constitutes a violation of the state and federal constitutions and such ordinance is found to be void as applied to the defendant Walnut herein."

Prior to the entry of judgment the city asked the court to take judicial notice of Ordinance No. 2254 which was enacted as an urgency measure on February 3, 1981. This was enacted in response to the trial court's proposed interpretation and to clarify any ambiguities. Sections 3, 4 and 5 of Ordinance No. 2254 read as follows:

"SECTION 3. Section 9512.1 is hereby added to the Whittier Municipal Code to read as follows:

" '9512.1 -ALTERNATE SPECIAL REGULATIONS. The special regulations set forth in this section shall apply to all uses which are subject to the provisions of this part if for any reason any of the special regulations set forth in Section 9512 hereof are declared invalid as applied to any such use.

"(1) That prior to establishing or conducting of any adult business, a conditional use permit therefor shall be obtained, pursuant to the provisions of Part 9 of this chapter; and

"(2) That no adult business shall be granted a conditional use permit unless the lot upon which such business is proposed to be located:

"(a) Is classified in Zone C-2 or a less restrictive zone; and

"(b) Is not within five hundred (500) feet of any lot classified in any of the R Zones; and

"(c) Is not within one thousand (1,000) feet of any lot upon which there is located a church; or

"(d) Is not within one thousand (1,000) feet of any lot upon which there is located any public, private or parochial, elementary, junior high, high school; or

"(e) Is not within one thousand (1,000) feet of any lot upon which there is located a City owned, operated and maintained public park; or

"(f) Is not within one thousand (1,000) feet of any lot on which there is located another adult business; or

"(g) Is not within five hundred (500) feet of any lot on which is located a business with a type 40, 42, 48 or 61 on sale alcoholic beverage license.'

"SECTION 4. If any section, subsection, subdivision, sentence, clause or phrase of this Ordinance is for any reason held to be unconstitutional or otherwise invalid, such decision shall not affect the validity of the remaining provisions of this Ordinance. The City Council hereby declares that it would have passed this Ordinance and each section, subsection, subdivision, sentence, clause and phrase thereof irrespective of the fact that any one or more sections, subsections, subdivisions, sentences, clauses, or phrases be declared unconstitutional.

"SECTION 5. That the City Clerk shall certify to the adoption of this Ordinance and shall cause the same to be published in the manner prescribed by law."

The trial court did take judicial notice of the ordinance, but the court based its judgment on the language contained in the code prior to its amendment and gave no effect to Ordinance No. 2254.

I

Appellant first argues that the trial court judgment is erroneous because the court did not apply the law as it existed at the time of the judgment. On February 3, 1981, after the court announced its tentative decision, but prior to entry of judgment, the city council enacted Ordinance No. 2254 as an urgency measure to eliminate the interpretation of section 9512, subdivision (2)(c) that had been proposed by the trial court. Although the court granted the city's request for judicial notice, the court's findings of fact and conclusions of law relied on the language of section 9512, subdivision (2)(c) as that section was written prior to the enactment of Ordinance No. 2254, and did not take into account the language of Ordinance No. 2254.[2]

---

[2]The amending Ordinance No. 2254 omitted the phrase "public facility."

Respondent argues that since the city's complaint dealt with Ordinance No. 2138 and not Ordinance No. 2254, the question of whether No. 2254 is constitutional was not properly before the trial court. We agree. At the time the trial court gave judgment, consideration of the validity of Ordinance No. 2254 was not properly before the trial court. Section 3 of Ordinance No. 2254 provides that by its own terms it becomes operative only "if for any reason any of the special regulations set forth in Section 9512 [enacted by Ordinance No. 2138] hereof are declared invalid as applied to any such use." That was an event which had not occurred.

■ ■■■■ Nonetheless, inasmuch as we agree with the trial court that Ordinance No. 2138 is in fact unconstitutional on its face,[3] we reach the issue of the validity of the substitute ordinance (No. 2254). By this decision, Ordinance No. 2254 will become operative. ■ It is settled law that the rights of the parties in an action in equity will be determined on the basis of the law as it exists at the time of the determination, rather than at the time the complaint was filed, and this rule applies to judgments on appeal as well as to judgments in the trial court. (*City & County of S.F.* v. *Budde* (1956) 139 Cal.App.2d 10, 12 [292 P.2d 955, 294 P.2d 503].) The version of the ordinance in force at the present is the relevant legislation for the purpose of the appeal. ■ It is an established rule of law that on appeals from judgments granting or denying injunctions, the law to be applied is that which is current at the time of judgment in the appellate court. (*Kash Enterprises, Inc.* v. *City of Los Angeles* (1977) 19 Cal.3d 294, 306, fn. 6 [138 Cal.Rptr. 53, 562 P.2d 1302].)

## II

Under the substitute ordinance, the only restrictions on the location of an adult theatre in the city would be that it be in a C-2 or less restrictive zone, not be within 500 feet of a residential zone, or within 1,000 feet of a church, educational institution, park or other adult business.

In *Young* v. *American Mini Theatres* (1976) 427 U.S. 50, 62, 63 [49 L.Ed.2d 310, 321, 96 S.Ct. 2440], the court held that the mere fact that the commercial exploitation of material protected by the First Amendment is subject to zoning and other licensing requirements is not sufficient reason for invalidating the ordinance. A zoning ordinance was not held invalid merely because it regulates activity protected under the First Amendment, where the challenged restriction on the location of adult movies imposed a

---

[3]The effect of the ordinance is clearly to prohibit the operation of any "adult" business within the city limits. Such an absolute exclusion is violative of First Amendment rights. (*Schad* v. *Mount Ephraim* (1981) 452 U.S. 61, 75 [68 L.Ed.2d 671, 684, 101 S.Ct. 2176].)

minimal burden on protected speech. (*Schad* v. *Mount Ephraim* (1981) 452 U.S. 61 at P. 71 [68 L.Ed.2d 671 at p. 682], analyzing *Young* v. *American Mini Theatres, supra.*) ■ A zoning law which is alleged to threaten First Amendment rights is subject to close scrutiny to pass constitutional muster and the zoning law affecting the location of adult theatres and bookstores is valid only so long as the zoning law does not have the effect of significantly reducing the numbers and availability to the public. (*Alexander* v. *City of Minneapolis* (D. Minn. 1982) 531 F.Supp. 1162, 1170.)

■ In assessing the reasonableness of a regulation, we must weigh heavily the facts and the communication involved; the regulation must be narrowly tailored to further the state's legitimate interest. To be reasonable, time, place and manner restrictions must not only serve significant state interests but must leave open adequate alternative channels of communication. (*Schad* v. *Mount Ephraim, supra,* 452 U.S. 61, 76 [68 L.Ed.2d 671, 685].) In *Alexander* v. *City of Minneapolis, supra,* 531 F.Supp. 1162, the zoning ordinance significantly curtailed the public's access to adult books and films and there would not have been a single location in the city for opening of new theatres and bookstores; therefore the Minneapolis zoning ordinance was unconstitutional and went beyond the mere locational restrictions. In *Schad* v. *Mount Ephraim, supra,* 452 U.S. 61, 75 [68 L.Ed.2d 671, 684], the borough excluded all live entertainment and there was no evidence in the record to support the proposition that the kind of entertainment appellants wished to provide was available in reasonably nearby areas. In *Basiardanes* v. *City of Galveston* (5th Cir. 1982) 682 F.2d 1203, the zoning ordinance was not reasonable as to time, place and manner where the ordinance banned adult theatres outright from much of the city, few access roads led to permitted locations, and the permissible locations were in undeveloped areas near warehouses and swamps. Galveston's law suppressed speech because it banned adult theatres outright from much of the city by putting them at a greater distance. (*Id.,* at p. 1214.)

■ In the case at bench, the zoning ordinance, No. 2254, is reasonable as to time, place and manner if it leaves open alternative channels of communication to the speaker and does not violate the First Amendment. *American Mini Theatres, supra,* 427 U.S. 50 rejected the notion that dispersal requirements alone muzzle protected speech. (*Basiardanes* v. *City of Galveston, supra,* 682 F.2d 1203.) If the ordinance merely requires relocation within Whittier and does not ban an adult theatre use, then it will not violate the First Amendment.

In the case at bench, the parties filed a "Stipulation" concerning proffered testimony on the subject of the availability of alternate site for the theatre. The stipulation, among other things, recited that Shawn F. Campell, a

named defendant in consolidated action No. SEC 29231, ". . . if sworn as a witness should testify, subject to objection hereinafter stated, as follows: . . ." It then went on to state his proposed testimony.

The stipulation then went on to provide:

"7. That Plaintiff objects, on grounds of relevancy, to the testimony offered in Section 6(a), (b) and (c) of this Stipulation; and

"8. That if the objection above were to be overruled, Plaintiff would call as a witness Elvin H. Porter, who would testify under oath, as follows:

"(a) That he has been the Planning Director of the City of Whittier for over fifteen (15) years; and

"(b) That he is fully familiar with the City's Zoning Regulations and the Zoning Map included therein, and that in his opinion, there are other locations within the boundaries of the City of Whittier, on commercially and industrially zoned properties, where 'adult businesses,' defined as such in the said Zoning Regulations, could be located; . . ."

The stipulation thus provided that city would call Elvin H. Porter as a witness only "if the objection above [on the ground of relevancy] were to be overruled."

That objection was never overruled. In fact, the record on appeal reveals no ruling as to it.

No evidence having been introduced on the crucial issue of the availability of other areas in which the theater might be operated, the matter must be remanded for a hearing and determination of that issue. If the ordinance herein merely disperses adult theatres as in *Young* v. *American Mini Theatres, supra,* 427 U.S. 50 and does not prevent the entry of new theatres into the market place, (see *Alexander* v. *City of Minneapolis, supra,* 531 F.Supp. 1162), the ordinance is not unconstitutional as applied, and is a reasonable restriction as to time, place and manner.

### III

Respondent argues that the term "adult theatre" is unconstitutionally vague and overbroad. While the term "adult theatre" may be ambiguous in ordinary English usage, it has become part of the American vernacular. Secondly, and more important, the term "adult theatre" is very specifically defined within the ordinance itself, and Whittier's definition of adult theatre

is very similar to the use of the term which was found constitutional in *Pringle* v. *City of Covina* (1981) 115 Cal.App.3d 151, 155 [171 Cal.Rptr. 251]. Although the *Pringle* court found the ordinance before it to contain some vague language, the *Pringle* court found itself compelled under the decision in *Pryor* v. *Municipal Court* (1979) 25 Cal.3d 238 [158 Cal.Rptr. 330, 599 P.2d 636] to construe the language narrowly in order to preserve its validity.

More recently in *Kuhns* v. *Board of Supervisors* (1982) 128 Cal.App.3d 369, 375 [181 Cal.Rptr. 1], the court also accepted a narrow interpretation of statutory language. The term "adult theatre" has been used frequently by the courts to describe a specific kind of entertainment, and the term is neither vague nor overbroad.

## IV

■ Respondent argues that the city failed to prove that Walnut was an "adult theatre" within the meaning of the ordinance. Respondent asserts that the record fails to reveal that a preponderance of the films shown at Walnut's theatre have as their dominant theme the depiction of the ordinance's enumerated sexual activities, in accord with the test set forth in *Pringle* v. *City of Covina, supra,* 115 Cal.App.3d 151 at page 162.

At the hearing before the city council, Lieutenant Marino testified that he made periodic inspections of the movies at the Walnut theatre, and these movies depicted various acts from which the city council could have concluded that the movies were "adult movies" within the legal meaning of that term.

We can find, in the record before us, no evidence contradictory of the lieutenant's testimony or any attack on his standing as an expert on the subject of "adult movies." Respondent, represented by experienced counsel, made no effort to attack the lieutenant's testimony, either before the city council or in the trial court. It agreed to submit the case on the record. However, as with the issue of alternative sites, the trial court made no finding on the issue of the character of respondent's theatre. On the record the only finding could be adverse to respondent, but it is entitled to have one made. On remand, the trial court shall make the required finding.

## V

■ Respondent argues that the ordinance is unconstitutional because prior to establishing or conducting an adult theatre, a conditional use permit must be required. The case at bar involves the abatement of a nonconform-

ing use and does not deal with the issuance or denial of a conditional use permit.

## VI

■ Respondent argues that the 120-day amortization period is unreasonable on its face. Zoning ordinances may validly provide for eventual termination of nonconforming property uses without compensation if the ordinance provides for a reasonable amortization period. The party complaining of the zoning legislation has the burden of establishing the unreasonableness of the amortization period and must provide evidence showing the particular period is unreasonable as to him. (*Castner* v. *City of Oakland* (1982) 129 Cal.App.3d 94 [180 Cal.Rptr. 682].) In the case at bench, respondent has cited us no evidence showing the unreasonableness of the amortization period. While we may agree that 120 days appears to be a very short period of time for respondent to reorganize its operation, we are not in a position to decide that here. Respondent had the burden of showing that the amortization period was unreasonably short as to it, and did not fulfill its burden.

## VII

■ Respondent argues that the ordinance violates the establishment clause of the First Amendment in requiring an adult theatre to be 1,000 feet from a church, it indorses a religion. Requiring an adult theatre to be 1,000 feet from a church does not establish a religion. The prohibition against establishing a religion means the government cannot force or influence a person to go to or remain away from a church (*Everson* v. *Board of Education* (1964) 330 U.S. 1 [91 L.Ed. 711, 67 S.Ct. 504, 168 A.L.R. 1392]) and the government must remain neutral in matters of religion. In the case at bar, the zoning ordinance herein does not have an impermissible religious purpose and the effect of requiring the adult theatre to move 1,000 feet from a church does not either encourage people to go to church nor discourage people from going to church. We cannot say the government has failed to remain neutral in matters of religion. The existence of an adult theatre within 1,000 feet of a church may well affect the sensibilities of some persons who attend a church, but we cannot agree that it will cause a person to go to church or that it will in any way advance a religion. Ordinances with similar locational requirements have been held valid, and we need not unduly lengthen this opinion by discussing those cases further.

The judgment is reversed. On remand, the trial court shall make the necessary rulings on proffered evidence as to the status of the theatre as an "adult theatre" and as to the availability of alternate sites in the City of

Whittier, and enter judgment in accordance with this opinion and such additional findings. Neither party shall recover costs in this court.

Woods, P. J., concurred.

McCLOSKY, J.—I dissent:

I

I agree with the majority that "[i]t is an established rule of law that on appeals from judgments granting or denying injunctions, the law to be applied is that which is current at the time of judgment in the appellate court." (Majority opn., *ante,* p. 640; *Kash Enterprises, Inc.* v. *City of Los Angeles* (1977) 19 Cal.3d 294, 306, fn. 6 [138 Cal.Rptr. 53, 562 P.2d 1302]; see also *City & County of S. F.* v. *Budde* (1956) 139 Cal.App.2d 10, 12 [292 P.2d 955] and *Complete Serv. Bur.* v. *San Diego County Med. Soc.* (1954) 43 Cal.2d 201, 207 [272 P.2d 497].) From that valid principle of law, the majority concludes that we should decide this case on the basis of Ordinance No. 2254. Based upon the fact that Ordinance No. 2254 is *not* the current law, I disagree with that conclusion.

Ordinance No. 2254 was enacted as an urgency measure on February 3, 1981, in response to the trial court's *proposed* interpretation of the original Ordinance No. 2138 (§ 9512, subd. (2)(c)). As the majority notes, the trial court took judicial notice of Ordinance No. 2254, but based its later judgment on the language contained in the original Ordinance No. 2138 prior to the enactment of No. 2254.

It is my view that in so doing the trial court was correct. At the time it gave judgment, consideration of the validity of Ordinance No. 2254 was not properly before the trial court and I do not believe that it is properly before us now. Section 3 of Ordinance No. 2254 provides as follows:

"Section 3. That Section 9512.1 is hereby added to the Whittier Municipal Code to read as follows:

" '9512.1 - Alternate Special Regulations.The special regulations set forth in this section *shall apply* to all uses which are subject to the provisions of this part *if for any reason any of the special regulations set forth in Section 9512 hereof are declared invalid as applied to any such use.*" (Italics added.)

At the time the trial court gave its judgment, there was no final judgment or judgment on appeal declaring any of the provisions of section 9512 of

Ordinance No. 2138 invalid. The record on appeal reflects no change in that situation to this date. That being so, there was no way the trial court could have properly considered the constitutionality of the provisions of Ordinance No. 2254, nor by which we may properly do so now. That ordinance, by its own terms, becomes operative *only* "if for any reason any of the special regulations set forth in Section 9512 [enacted by Ordinance No. 2138] hereof are declared invalid as applied to any such use." That was an event which had not, and to this day has not, occurred.

It is one thing to hold, as *Kash Enterprises* quite properly does, that the relevant law is that which exists at the time of the judgment on appeal. It is quite a different, and in my view an impermissible thing for the majority to hold that it will "reach the issue of the validity of the substitute ordinance (No. 2254)" because "[b]y this decision, Ordinance No. 2254 will become operative." That is a premature leap I am unwilling to take. The flaw in the majority's conclusion is that there is no existing final judgment on appeal declaring the original Ordinance No. 2138 invalid. (See majority opn., *ante,* p. 640.) Assuming no petition for hearing is filed with the Supreme Court, the earliest the majority's decision could become final—and thus operative— would be 30 days after its filing. There is thus no judgment on appeal that is final or operative now.

## II

We are directed by the Supreme Court's order of May 19, 1983, retransferring this matter to us, to reconsider our previous order which precluded "further proceedings to resolve the factual issue posed by paragraphs 6(a) and 8 of the Stipulation of Facts filed November 13, 1979, included at p. 196 of the Clerk's Transcript."

Paragraph 6 of that stipulation, among other things, recited that Shawn F. Campbell, a named defendant in consolidated action No. SEC 29231, ". . . if sworn as a witness should testify, subject to objection hereinafter stated, as follows: . . ."

After stating his proposed testimony, the stipulation then went on to provide:

"7. That Plaintiff objects, on grounds of relevancy, to the testimony offered in Section 6(a), (b) and (c) of this Stipulation; and

"8. That if the objection above were to be overruled, Plaintiff would call as a witness Elvin H. Porter, who would testify under oath, as follows:

"(a) That he has been the Planning Director of the City of Whittier for over fifteen (15) years; and

"(b) That he is fully familiar with the City's Zoning Regulations and the Zoning Map included therein, and that in his opinion, there are other locations within the boundaries of the City of Whittier, on commercially and industrially zoned properties, where 'adult businesses', defined as such in the said Zoning Regulations, could be located; . . ."

The stipulation thus provided that city would call Elvin H. Porter as a witness *only* "if the objection above [on the ground of relevancy] were to be overruled." It never was. In fact, as the majority concedes, the record on appeal reveals no ruling as to it. It accordingly follows that, having waived such ruling below, city may not now rely on the testimony of Elvin H. Porter that it offered only on the nonoccurring condition that its objection to Shawn F. Campbell's testimony was overruled. That left the record devoid of any evidence whatsoever to support city's position in regard to location.

I fully agree that the mere fact that the commercial exploitation of material protected by the First Amendment is subject to zoning and other licensing requirements is not sufficient reason for invalidating an ordinance. A zoning ordinance is not invalid merely because it regulates activity protected under the First Amendment, where the challenged restriction on the location of adult movies imposes a *minimal* burden on the protected speech. (*Young* v. *American Mini Theatres* (1976) 427 U.S. 50, 62, 63 [49 L.Ed.2d 310, 321-322, 96 S.Ct. 2440]; see also *Schad* v. *Mount Ephraim, supra,* 452 U.S. 61, 71 [68 L.Ed.2d 671, 682].) A zoning law which is alleged to threaten First Amendment rights is, however, subject to close scrutiny to pass constitutional muster. Such zoning law affecting the location of adult theatres and bookstores is valid only so long as it does not have the effect of significantly reducing the numbers of such businesses and their availability to the public. (*Alexander* v. *City of Minneapolis* (D.Minn. 1982) 531 F.Supp. 1162, 1170.)

In assessing the reasonableness of a regulation, the courts must weigh heavily the facts and the communication involved. To be reasonable, the regulation must be narrowly tailored to further the state's legitimate interest and the regulation's time, place and manner restrictions not only must serve significant state interests but must leave open adequate alternative channels of communication. (*Schad* v. *Mount Ephraim* (1981) 452 U.S. 61, 76 [68 L.Ed.2d 671, 685, 101 S.Ct. 2176].) In *Schad,* the borough excluded all live adult entertainment and there was no evidence in the record to support the proposition that that kind of entertainment was available in reasonably

nearby areas. In *Basiardanes* v. *City of Galveston* (5th Cir. 1982) 682 F.2d 1203, the zoning ordinance was held not reasonable as to time, place and manner where the ordinance banned adult theatres outright from much of the city, few access roads led to permitted locations and the permissible locations were in undeveloped areas near warehouses and swamps. Galveston's law suppressed speech because it banned adult theatres outright from much of the city by putting them at a great distance. (682 F.2d at p. 1214.)

In *Alexander* v. *City of Minneapolis, supra,* 531 F.Supp. 1162, where the zoning ordinance significantly curtailed the public's access to adult books and films as there would not have been a single location in the city for opening of new theatres and bookstores, the court declared the city's zoning ordinance unconstitutional as going beyond mere locational restrictions.

### III

As Walnut's claims are grounded in the First Amendment, city has the burden of overcoming the presumption that the ordinance is invalid because it impinges on freedom of expression. (*Schad* v. *Mount Ephraim, supra,* 452 U.S. 61.) The zoning ordinance must be narrowly drawn to further a sufficiently substantial government interest, and unless the ordinance advances significant governmental interests and accomplishes such advancement without undue restraint of speech, the ordinance is invalid. The city must buttress its assertion with evidence that the state interest has a basis in fact and that the factual basis was considered by the city in passing the ordinance. (*Avalon Cinema Corp.* v. *Thompson,* (8th Cir. 1981) 667 F.2d 659, 661.) The record on appeal in this matter before us fails to support the conclusion that the city sustained its burden of overcoming the presumption of invalidity by proving that the ordinance in question was narrowly drawn, that it advanced a significant governmental interest without undue restraint of speech and that the state interest in fact or that the factual basis was considered by the city in passing the ordinance.

The majority, relying on *County of Sacramento* v. *Superior Court* (1982) 137 Cal.App.3d 448, 454-455 [187 Cal.Rptr. 154], holds that identical ordinances need not be tested anew each time they are enacted by a different governmental entity by establishing the actual existence of local conditions which would justify it since lawmakers in one locale should not be denied the benefit of the wisdom and experience of lawmakers in another community. From that premise, they conclude that since sociologists and urban planners have testified that a concentration of adult movie theatres in limited areas lead to the deterioration of surrounding neighborhoods (see *Young* v. *American Mini Theatres, supra,* 427 U.S. 50, 80 [49 L.Ed.2d 310, 332]), City need not bring its own sociologists to apply these observations to the

City of Whittier. (See also *Strand Property Corp.* v. *Municipal Court* (1983) 148 Cal.App.3d 882, 47 Cal.Rptr. 200].)

In my view, we need not decide that question since the necessary factual premise for it is wholly lacking in the case before us. Far from there being any evidence that there was any concentration of adult movie theatres in any part of the City of Whittier or any possibility that there would be any, there was no evidence presented to the trial court that there was more than the one theatre operated by the respondent.

I conclude that the only current existing and operative ordinance was the original Ordinance No. 2138. I agree with the majority that that ordinance is unconstitutional. Moreover I find no competent evidence in the record to support the city's position that there were other available commercially or industrially zoned locations within the city where an adult business of the nature of respondent's could be located.

I therefore see no basis in law or equity for a reversal or for a further remand to the trial court.

I would affirm the judgment.

A petition for a rehearing was denied January 3, 1984. McClosky, J., was of the opinion that the petition should be granted. Respondent's petition for a hearing by the Supreme Court was denied February 2, 1984.