Filed 2/4/14  Shapiro v. City of Carlsbad CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| RICHARD A. SHAPIRO,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CITY OF CARLSBAD,<br><br>    Defendant and Respondent. | D062260<br><br><br>(Super. Ct. No. 37-2010-00060267-CU-CR-NC) |

APPEAL from a judgment of the Superior Court of San Diego County, Thomas P. Nugent, Judge.  Affirmed.

Richard A. Shapiro, in pro. per., for Plaintiff and Appellant.

Daley & Heft, Lee H. Roistacher, Mitchell D. Dean, Samuel C. Gazzo; Celia A. Brewer, City Attorney, and Paul G. Edmonson, Assistant City Attorney, for Defendant and Respondent.

The City of Carlsbad (the city), defendant and respondent herein, has adopted ordinances that require participants at Carlsbad city council meetings to: exhibit good

decorum; refrain from using loud, boisterous behavior that disrupts proceedings; and obey the directives of the presiding officer. Plaintiff and appellant, Richard A. Shapiro, a regular participant at city council meetings, challenges the validity of the city's ordinances both on their face and as applied to him.

Because Shapiro's appeal is not supported by an adequate record or a coherent brief, he has failed to overcome the presumption that the judgment appealed from is correct. Moreover, when, as here, such municipal decorum ordinances are limited to conduct that disrupts or delays proceedings, they do not represent an unlawful intrusion on the free speech rights of citizens and serve the important interest of assuring that public bodies may conduct public business in an orderly and effective manner. (See *White v. City of Norwalk* (9th Cir. 1990) 900 F.2d 1421, 1424 (*White*).) Accordingly, we affirm the judgment of the trial court that dismissed Shapiro's petition for an injunction preventing the city from enforcing its decorum ordinances.

FACTUAL AND PROCEDURAL BACKGROUND

The city provides members of the public with an opportunity to address the city council with respect to matters not on the council's agenda but within the jurisdiction of the city. City ordinance 1.20.305 governs such public comments and provides:

"(a) Every agenda for a regular council meeting shall provide a period for members of the public to address the council on items of interest to the public that are not on the agenda but are within the jurisdiction of the city council.

"(b) Speakers shall be limited to three minutes each with the total time for all

2

speakers not to exceed fifteen minutes unless additional time is granted by majority vote of the council. Anyone desiring to speak shall reserve time at the meeting by filing a written request with the city clerk. Speakers will be called in the order reserved within the available time. The mayor with the consent of the council may, if time permits, allow persons to speak who have not filed a written request to reserve time.

"(c) Each person desiring to address the council shall approach the podium, state the subject he/she wishes to discuss, city of residence, and his/her name and/or party he/she is representing (unless otherwise determined by the city attorney to be unnecessary). All remarks shall be addressed to the council as a whole and not to any member thereof. No questions shall be asked of a council member or a member of the city staff without obtaining the permission of the presiding officer. The presiding officer shall not permit any communication, oral or written, to be made or read where it is not within the subject matter jurisdiction of the city council."

On June 22, 2010, July 13, 2010, August 24, 2010, and September 28, 2010, Shapiro appeared at Carlsbad city council meetings and addressed the council during its nonagenda public comment period. In each instance, Shapiro was loud and verbally abusive.[1] The city's mayor was presiding at each meeting and, in three instances, he

---

[1] On June 22, 2010, Shapiro addressed the council by stating: "You know, I'm completely cooked with the issue of harassing homeless people, especially ones that have a vehicle, a roof over their head." Escalating his tone and volume, he then exclaimed: "[I]t's despicable for police to go around—I've seen police give tickets to a couple with their kids in their RV, their last resort to have a God damn roof over their head And that's bullshit." At that point, the mayor interrupted Shapiro and tried to suggest that he act more calmly, but Shapiro only became more agitated and screamed: "I don't care. I'm going to continue to talk." When the mayor responded by directing him to be

3

courteous, Shapiro continued yelling. The mayor then told Shapiro his time was up, and Shapiro responded: "No. I have three minutes. I have three minutes." The mayor then told Shapiro to leave the podium, and Shapiro stated: "Cussing is allowed. Show me the law that cussing is not allowed. [¶] . . . [¶] Okay. Another lawsuit. Thank you." As Shapiro finally left the podium, he shouted: "Fuck you. Fuck you. Fuck you. Fuck you. Show me the law that says I can't say fuck you."

On July 13, 2010, Shapiro made another appearance at the city council meeting during its nonagenda public comment period. He began by personally attacking the mayor, referring to him as "King Bud," "a fascist" and "an evil SOB." In a very loud and angry voice, Shapiro then stated: "So here's the deal, Bud. Language is legal in this country, and it[']s the reason why we are this country. And for you to do what you did is abhorrent, despicable, hideous, disgusting, vile and repugnant. Not everything at a city council needs to be happy at a five-year old's level of mentality of giddy and sweetness and light. . . . And I'd be happy to go toe to toe with you, King Bud, to test each of our own language abilities, because I'd rip you sorry derriere into oblivion on speech, language, semantics, pragmatics, semiotics, blah-blah-blah. Okay? So why didn't you get back to me on that list of bad words, King Bud? See, this is what city councils and mayors do. . . ." The mayor did not respond to Shapiro's criticism. The absence of a response agitated Shapiro who stated: "King Bud -- look me in the eye. Have some guts. That's right, smirk, because you can't -- you can't be an adult. You have to be an insane child. And I'm telling that right to your eyes, right to your face." After Shapiro was informed that his time was up by the mayor, Shapiro yelled "Bullshit" and immediately left.

On August 24, 2010, Shapiro appeared again at a city council meeting. He stated: "I've experienced my entire life, and if it wasn't for the massive pussies -- not citizens -- but massive pussies of this country we'd have a constitution." The mayor then interjected and attempted to calm Shapiro down, and Shapiro again, in a loud and angry tone, stated: "Oh, so now pussies is not a[ll] right." At that point, the mayor directed that Shapiro be removed from the meeting. Before he was removed, Shapiro shouted: "[C]orrect word? Pussies is no good? Okay. Pussy. All right. Pussy. Pussy. Pussy is now a bad word. How about frickin' or hell or darn or shucks? This is what you get in a fascist land. I love it. Fascism here we go, right before your very eyes. Demonstration. Don't you love it? Don't you love it?" After Shapiro was removed, he was arrested.

On September 28, 2010, Shapiro appeared once again at a city council meeting. After reading a quotation from Fredrick Douglas and making reference to a radio personality, Shapiro told the mayor: "It would be nice if you give me a little eye contact, Sir. [T]he other word is the exact thing I meant when I said that horrible word, you know, the p-u-s-s-y word, and that's called pusillanimous." At that point, the mayor interrupted Shapiro and attempted to inquire of Shapiro as to whether he had any city business to discuss; when Shapiro interrupted the mayor, the mayor told him that he needed to leave.

4

interrupted Shapiro and ultimately prevented him from continuing to speak. At the August 24, 2010 city council meeting, Shapiro was forcibly removed and arrested.

At the time of Shapiro's appearances in 2010, city ordinance 1.20.330(b) provided: "Any member of the council or other person using vulgar, profane, loud, or boisterous language at any meeting or otherwise interrupting the proceedings of the council, or who refuses to carry out orders and instructions given by the presiding officer for the purpose of maintaining order and decorum at the council meeting, or who interrupts proceedings, shall upon conviction be deemed guilty of a misdemeanor."

In addition, at the time of Shapiro's appearances, city ordinance 1.20.320 provided: "Members of the pubic attending council meetings shall observe the same rules of order and decorum applicable to the city council and staff." City ordinance 1.20.310 in turn provided: "While the council is in session, the council members and city staff shall observe good order and decorum. A member shall neither, by conversation or otherwise, delay or interrupt the proceedings, nor refuse to obey the directives of the presiding officer."

On October 6, 2010, Shapiro filed a petition for a permanent injunction preventing the city from enforcing its decorum ordinances. By way of a June 1, 2011, second amended petition, Shapiro alleged the city's ordinances were unconstitutionally vague and overbroad. Shapiro's petition set forth causes of action for violations of title 42 United States Code section 1983, the California Constitution, the Brown Act (Gov. Code, § 54953 et seq.), and the Bane Act (Civ. Code, § 52.1).

5

On July 27, 2011, shortly after Shapiro filed his second amended petition, the city amended its decorum ordinances. Ordinance 1.20.330(b) was amended to provide: "Any person, including any member of the council or city staff, who by voice or conduct engages in loud, boisterous, or unruly behavior *that substantially disrupts a council meeting,* that does not comply with the rules as set forth in this chapter for governance of such meeting, and continues after the mayor has requested such person(s) to stop, is engaging in unlawful conduct and, except as set forth in subsections (c) and (d) of this section, shall constitute an infraction." (Italics added.)

Ordinance 1.20.320 was amended to provide: "Members of the public attending council meetings shall observe the same rules of order and decorum applicable to city council and staff. Any person wishing to address the council is responsible for familiarizing himself/herself with the rules and ordinances applicable to council meetings." Ordinance 1.20.210 was in turn amended to provide: "While the council is in session, the council members and city staff shall observe good order and decorum and shall not by conversation or otherwise, improperly delay or interrupt the proceedings nor refuse to obey the directives of the mayor as authorized under this chapter."

Shapiro and the city each moved for summary judgment. The trial court denied Shapiro's motion and granted the city's. The court found that Shapiro's challenges to the decorum ordinances were moot because the ordinances he challenged had been amended and that, in any event, the ordinances in effect at the time Shapiro made his appearances in 2010 were valid on their face and as applied to him. The trial court found that Shapiro

6

failed to establish any violation of either the Brown Act or the Bane Act. The trial court entered a judgment in favor of the city, and Shapiro filed a timely notice of appeal.

DISCUSSION

I

Shapiro's appeal is wanting in important respects. He has not provided a reporter's transcript of the hearing on the parties' motion and, as the city points out, Shapiro's opening brief is something of a challenge to decipher. Shapiro's brief largely recites and criticizes the trial court's findings, with only random citations to cases and little coherent analysis.

In the absence of a complete record, Shapiro cannot overcome the presumption that the trial court's judgment was correct. (*Maria P. v. Riles* (1987) 43 Cal.3d 1281, 1295-1296.) Moreover, "[a]n appellant must provide an argument and legal authority to support his contentions. This burden requires more than a mere assertion that the judgment is wrong. 'Issues do not have a life of their own: If they are not raised or supported by argument or citation to authority, [they are] . . . waived.' [Citation.] It is not our place to construct theories or arguments to undermine the judgment and defeat the presumption of correctness. When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived." (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852.)

Because Shapiro has failed to provide either an adequate record or entirely coherent briefing, we are not required to consider the merits of any of his contentions and

7

may simply affirm the judgment on the grounds he has waived any objection to it. (*Maria P. v. Riles*, *supra*, 43 Cal.3d at pp. 1295-1296; *Benach v. County of Los Angeles*, *supra*, 149 Cal.App.4th at p. 852.) Nonetheless, to the extent Shapiro raises coherent objections to the judgment, as we explain, we find no merit in them.

II

Although the ordinances Shapiro challenged were amended after he filed his petition, in considering his request for equitable relief, arguably we are required to consider the current version of the ordinances and whether they meet constitutional muster. (See *City of Whittier v. Walnut Properties, Inc.* (1983) 149 Cal.App.3d 633, 639-640.) Because the face of the amended ordinances only regulate behavior that *disrupts*, *delays* or *interrupts* city council proceedings (see ordinances 1.20.330 and 1.20.310), they are not fatally overbroad. (*White*, *supra*, 900 F.2d at pp. 1424-1425.)

In this context, we agree with the court's statement in *White*: "A . . . fundamental flaw in plaintiffs' position is that their first amendment arguments do not take account of the nature of the process that this ordinance is designed to govern. We are dealing not with words uttered on the street to anyone who chooses or chances to listen; we are dealing with meetings of the Norwalk City Council, and with speech that is addressed to that Council. Principles that apply to random discourse may not be transferred without adjustment to this more structured situation.

"City Council meetings like Norwalk's, where the public is afforded the opportunity to address the Council, are the focus of highly important individual and

8

governmental interests. Citizens have an enormous first amendment interest in directing speech about public issues to those who govern their city. It is doubtless partly for this reason that such meetings, once opened, have been regarded as public forums, albeit limited ones. [Citations.]

"On the other hand, a City Council meeting is still just that, a governmental process with a governmental purpose. The Council has an agenda to be addressed and dealt with. Public forum or not, the usual first amendment antipathy to content-oriented control of speech cannot be imported into the Council chambers intact. In the first place, in dealing with agenda items, the Council does not violate the first amendment when it restricts public speakers to the subject at hand. [Citation.] While a speaker may not be stopped from speaking because the moderator disagrees with the viewpoint he is expressing, [citation], it certainly may stop him if his speech becomes irrelevant or repetitious.

"Similarly, the nature of a Council meeting means that a speaker can become 'disruptive' in ways that would not meet the test of actual breach of the peace, [citation], or of 'fighting words' likely to provoke immediate combat. [Citation.] A speaker may disrupt a Council meeting by speaking too long, by being unduly repetitious, or by extended discussion of irrelevancies. The meeting is disrupted because the Council is prevented from accomplishing its business in a reasonably efficient manner. Indeed, such conduct may interfere with the rights of other speakers." (*White*, *supra*, 900 F.2d at pp. 1425-1426, fns. omitted.)

9

Moreover, although generally the California Constitution provides individuals with greater free speech protection than the First Amendment of the United States Constitution, in some settings the protection is co-extensive. (See *Brown v. Kelly Broadcasting Co.* (1989) 48 Cal.3d 711, 745-746.) Article I, section 2, subdivision (a) of the California Constitution states: "Every person may freely speak, write and publish his or her sentiments on all subjects, *being responsible for the abuse of this right*. A law may not restrain or abridge liberty of speech or press." (Italics added.) As the court in *Brown* noted, "[t]his provision makes clear that the right to speech is not unfettered . . . ." (*Brown v. Kelly Broadcasting Co.*, *supra*, 48 Cal.3d at p. 746.) In the particular forum provided by a city council meeting, the need to *responsibly* exercise the right to free speech is, as the court in *White* pointed out, manifest. Thus, we believe the California Constitution imposes on citizens who appear at city council meetings no less a duty to behave in a nondisruptive manner than is required by the First Amendment of the United States Constitution. Accordingly, the city's current decorum ordinances are also valid on their face under the California Constitution.

Finally, nothing in the record suggests that, as applied by the mayor at Shapiro's appearances, the city's ordinances unduly infringed on his free speech rights. The record shows that, in each of the three instances in which the mayor prevented Shapiro from continuing to speak, although Shapiro engaged in offensive profanity, the mayor only acted either after it became clear Shapiro would not recognize the mayor's authority as presiding officer to control proceedings, Shapiro's comments were not directed to matters

10

within the jurisdiction of the city as required by the public comment ordinance, or Shapiro's comments were directed personally at the mayor in violation of the public comment ordinance.

In this regard, we must recognize the practical reality that, when it appears a speaker's remarks may not be relevant to either an agenda item or, in the case of a nonagenda comment, outside the scope of such comments, a moderator may reasonably interrupt the speaker to inquire as to the nature of the speaker's intended remarks and direct that the speaker confine his remarks to relevant and pertinent matters. At that juncture, it falls upon the speaker to respond to the moderator's inquiry and direction rather than, as repeatedly occurred here, continue speaking. When a speaker is unwilling to recognize the authority of a presiding officer or moderator, the speaker is per se disrupting proceedings. Public comments that are not subject to such rudimentary controls by a presiding officer or moderator invite useless chaos, which in no way serves the public interest or public discourse. As the court in *White*, *supra*, 900 F.2d at page 1426 noted: "[T]he point at which speech becomes unduly repetitious or largely irrelevant is not mathematically determinable. The role of a moderator involves a great deal of discretion. Undoubtedly, abuses can occur, as when a moderator rules speech out of order simply because he disagrees with it, or because it employs words he does not like." No such abuse by the mayor appears here.

Like the trial court, we find no evidence in the record that the city violated either the Brown Act or the Bane Act.

11

DISPOSITION

The judgment is affirmed.

BENKE, Acting P. J.

WE CONCUR:

HUFFMAN, J.

McINTYRE, J.

12